UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— X

KADIAN NOBLE,              :

           Plaintiff,    :

     v.           :

HARVEY WEINSTEIN, BOB WEINSTEIN,  :
THE WEINSTEIN COMPANY LLC, and  :
WEINSTEIN COMPANY HOLDINGS, LLC,  :

        Defendants.   :

——————————————————— X

Case No.: 17-cv-09260-RWS

**MEMORANDUM IN SUPPORT OF
DEFENDANT HARVEY WEINSTEIN'S
MOTION TO DISMISS COUNT I OF
PLAINTIFF'S AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Phyllis Kupferstein
Roxanna A. Manuel
KUPFERSTEIN MANUEL LLP
865 South Figueroa Street, Suite 3338
Los Angeles, California 90017
(213) 988-7531

Mary E. Flynn
Aaron Schue
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant Harvey
Weinstein*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ............................................................................................................... 4

I.  STANDARD OF REVIEW ................................................................................. 4

II. PLAINTIFF CANNOT STATE A CLAIM AGAINST WEINSTEIN
    BECAUSE SHE FAILS TO ALLEGE A COMMERCIAL SEX ACT
    OCCURRED ....................................................................................................... 5

    A.  The Alleged Facts Do Not Satisfy the "Commercial"
        Component of the Commercial Sec Act Element ................................. 6

    B.  The Facts Alleged Do Not Describe "Sex Acts" as Required
        by Section 1591 ...................................................................................... 11

    C.  Weinstein's Purported Misconduct Was Not Actionable under
        the Statue in Effect in February 2014 ............................................... 12

CONCLUSION ............................................................................................................. 14

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 1949-50 .......................................................................... 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2207) ..................................................................... 4, 5

*Ditullio v. Boehm,*
    662 F. 3d 1091 (9th Cir. 2011)). ......................................................................... 9

*Gonzales v. Raich,*
    545 U.S. 1, 125 S. Ct. 2195, 2210 (2005) ............................................................ 8

*Kolbeck v. Twenty First Century Holiness Tabernacle Church,*
    2013 WL 6816174 (W.D. Ark.) (Dec. 24, 2013) ........................................... 8, 9

*Todd v. United States,*
    No. C-11-0470, 2012 WL 2952084 (W.D. Wash. June 26, 2012) ................................. 6

*United States v. Campbell,*
    111 F. Supp.3d 340 (W.D.N.Y. 2015) ................................................................ 8

*United States v. Clark,*
    435 F.3d 1100 (9th Cir. 2006), *cert. denied,* 549 U.S. 1343 (2007) ........................... 7

*United States v. Cook,*
    782 F.3d 983 (8th Cir.), *cert. denied,* 136 S. Ct. 262 (2015) ....................................... 9

*United States v. Evans,*
    476 F.3d 1176 (11th Cir.) ...................................................................................... 5

*United States v. Gemma,*
    818 F.3d 23 (1st Cir.), *cert. denied,* 137 S. Ct. 410 (2016) ............................................ 9

*United States v. Jungers,*
    702 F.3d 1066 (8th Cir. 2013) ............................................................................. 12

*United States v. Marcus,*
    487 F. Supp.2d 289 (E.D.N.Y. 2007), vacated on other grounds,
    538 F.3d 97 (2d Cir. 2008) ................................................................................. 10

*United States v. Morrison,*
    529 U.S. 598, 120 S. Ct. 1740, 1751 (2000) ....................................................... 7

*United States v. Paris,*
    2007 WL 3124724 (D. Conn.) (Oct. 24, 2007) ................................................... 8

*United States v. Reed,*
    2017 WL 3208458 (D.D.C.) (July 27, 2017) ...................................................... 8

*United States v. Tutstone*,
  2013 WL 1811278 (6th Cir. Apr. 30, 2013)...................................... 9

*United States v. Walls*,
  784 F.3d 543 (9th Cir. 2015) .............................................. 5

## STATUTES AND RULES

18 U.S.C. § 1591...................................................... passim

18 U.S.C. § 1591(a) ...................................................... 6

18 U.S.C. § 1591(a)(1) ................................................... 12

18 U.S.C. § 1591 (e)(3) ............................................... 7, 10

18 U.S.C. § 1595 ...................................................... 1, 8

18 U.S.C. § 1596 ......................................................... 5

18 U.S.C. § 2246(2) ................................................. 11, 12

18 U.S.C. § 2246(3) ..................................................... 11

18 U.S.C. § 2423 ......................................................... 8

22 U.S.C. § 7101(b)(1) ................................................... 5

22 U.S.C. § 7102(5) ...................................................... 6

Fed. R. Civ. P. 12(b)(6)........................................... 1, 4, 14

## MISCELLANEOUS

5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*
  § 1216 (1990) .......................................................... 4

https://fas.org/sgp/crs/misc/r43597.pdf................................... 2

http://www.imdb.com/name/nm7835416/...................................... 2

http://www.imdb.com/title/tt2022520/?ref_=nm_knf_t1...................... 2

https://www.congress.gov/bill/114th-congress/senate-bill/178 ........... 12

Defendant Harvey Weinstein ("Weinstein"), through his attorneys Kupferstein Manuel LLP and Morrison Cohen LLP, hereby respectfully submits this memorandum of law in support of his motion to dismiss the first Count of Plaintiff Kadian Noble's Amended Complaint (Doc. 48) pursuant to Fed. R. Civ. P. 12(b)(6).

<u>PRELIMINARY STATEMENT</u>

Plaintiff Kadian Noble alleges that Weinstein sexually assaulted her in Cannes, France, and thereby violated the federal sex trafficking statute, 18 U.S.C. § 1591, for which she seeks damages under 18 U.S.C. § 1595. Not every alleged sexual assault constitutes a federal violation, however, and Plaintiff fails to allege essential elements of the sex trafficking statute that give rise to a private cause of action. In particular, in her second attempt to plead a viable claim, Plaintiff still fails to allege that she was caused to engage in a "commercial sex act," as neither she nor Weinstein paid or received anything of value in exchange for a sexual act as defined in the federal criminal statutes. Nor does she allege that Weinstein's purported actions bring him within the ambit of the sex trafficking statute in effect at the time of their alleged encounter. Without these allegations, Plaintiff cannot assert a viable claim under 18 U.S.C. § 1591, her sole claim against Weinstein. No amendment can cure these defects.

Assuming Plaintiff's allegations are true, they would unfairly expand the federal sex trafficking statute to all sexual activity occurring between adults in which one party holds a superior position of power and influence. Further, Plaintiffs' allegations that Weinstein made indefinite and vague promises of future benefits,

such as a potential role in an unnamed film or assistance in facilitating a meeting with a modeling agency, are insufficient to constitute commercial sex acts giving rise to sex trafficking as a matter of law. Criminalizing such activity is contrary to the statute's purpose, which is to prevent slavery, involuntary servitude, and human trafficking for commercial gain that affects interstate and foreign commerce. https://fas.org/sgp/crs/misc/R43597.pdf.

Therefore, Count I, and Plaintiff's Amended Complaint in its entirety as to Weinstein, should be dismissed with prejudice without leave to amend.

## STATEMENT OF FACTS[1]

Plaintiff alleges that sometime in February 2014, Weinstein told her in London, England, "that he had an acting role in mind for her and insisted that 'it will be good for you.'" Amended Complaint ("AC"), ¶¶15-16. Plaintiff later met with an Executive Assistant for The Weinstein Company ("TWC") in London office and provided the assistant with Plaintiff's "show 'reel,' *i.e.*, a sample of her acting work." *Id.*, ¶20.[2] Subsequently, Weinstein approached Plaintiff at a hotel in Cannes, France, and invited her to his room to review her reel and discuss the film role. *Id.*, ¶27. She went to his room, sat on the couch, and then played her film reel for Weinstein. *Id.*, ¶¶28-29. Weinstein allegedly massaged Plaintiff, gripped her shoulders, and told her to relax. *Id.*, ¶29. Weinstein told Plaintiff that he would arrange a meeting for her

---

[1] Although he denies Plaintiff's allegations, Weinstein assumes, as he must, solely for purposes of this motion, that the facts alleged in the Amended Complaint are true.
[2] IMDb credits plaintiff with only one role: "Guest" in the film *Riot in Redchurch Street*, http://www.imdb.com/name/nm7835416/, a 2012 film from the United Kingdom. http://www.imdb.com/title/tt2022520/?ref_=nm_knf_t1

with a modeling agency in London. *Id.* For "audition purposes," Weinstein asked Plaintiff to walk up and down the room for him, which she did. *Id.*, ¶30. Weinstein then called "an unnamed TWC producer" and put Plaintiff on the phone with him. The alleged producer told Plaintiff to be a "good girl" and "they would work with her." *Id.*, ¶31.

Plaintiff further alleges that, after the call, Weinstein groped her breasts and that she resisted but "complied because of the tangible and intangible benefits [Weinstein] offered to advance her career, which she would only receive from a favorable relationship with him." *Id.*, ¶32. She claims that Weinstein told her that he "had to have her [sexually]," pulled her into the bathroom, rubbed Plaintiff's breast and buttocks, pulled her shirt down, rubbed her genitals, took out his penis and began masturbating, then forced Plaintiff to masturbate him. *Id.*, ¶¶32-37. According to the Amended Complaint, Weinstein told Plaintiff after he ejaculated that "his people" would be in touch with her, "which she understood to refer to" Weinstein's assistant, the TWC Executive Assistant, and the male TWC assistant, "who would provide the details and arrangements for the role he had promised and other benefits offered." *Id.*, ¶39. Presumably no such role or "other benefits" materialized (*see* n.2, *supra*) despite Plaintiff's purported efforts to follow up on Weinstein's alleged promises. *Id.*, ¶40-42. In Cannes in May 2016, Plaintiff "confronted" Weinstein but he "acted coldly toward [her]." This lawsuit ensued.

**ARGUMENT**

## I. <u>STANDARD OF REVIEW</u>

The law applicable to this motion is clear. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). In determining the adequacy of a complaint, a court must disregard the complaint's conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible – as opposed to merely conceivable – claim for relief. *Id.* at 679. Claims that do not cross the "line from conceivable to plausible" must be dismissed. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570). When the complaint cannot raise a claim of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly,* 550 U.S. at 558 (*citing* 5 Wright & Miller § 1216, at 233-234 (internal citations omitted)).

As discussed below, Count I of the Amended Complaint is clearly deficient in that it fails to allege facts supporting Plaintiff's sex trafficking claim against Weinstein. Accordingly, Weinstein's Motion to Dismiss should be granted, and Count I should be dismissed with prejudice.

4

## II. PLAINTIFF CANNOT STATE A CLAIM AGAINST WEINSTEIN BECAUSE SHE FAILS TO ALLEGE A COMMERCIAL SEX ACT OCCURRED

Plaintiff, who alleges a sexual encounter with Weinstein while they were in a hotel room in Cannes, seeks civil liability against Weinstein pursuant to a federal statute that criminalizes sex trafficking affecting interstate and intrastate commerce.[3] That statute, The Justice for Victims of Trafficking Act of 2015, codified at 18 U.S.C. § 1591, is "part of a comprehensive regulatory scheme" that "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." *United States v. Evans,* 476 F.3d 1176, 1179 (11th Cir.), *cert. denied,* 552 U.S. 878 (2007) ("Congress recognized that human trafficking, particularly of women and children in the sex industry, is a modern form of slavery, and it is the largest manifestation of slavery today.").

The legislation was enacted because "Congress recognized that human trafficking, particularly of women and children in the sex industry 'is a modern form of slavery, and it is the largest manifestation of slavery today.'" *United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015) (quoting 22 U.S.C. § 7101(b)(1)), *cert. denied*, 136 S. Ct. 226 (2015).  Thus, Congress did not intend the sex trafficking statute to apply in this case, in which Plaintiff alleges a single, gender-based sexual incident that was not connected to a sex trafficking scheme. Indeed, the legislative history surrounding the TVPRA makes clear that Congress was concerned that victims were

---

[3] Although the acts complained of occurred in France, courts have applied exterritorial jurisdiction to claims under Section 1591 when the defendant is a national of the United States.  *See* 18 U.S.C. § 1596.

being lured "away from family and friends, religious institutions, and other sources of protection and support." 22 U.S.C. § 7102(5). *See Todd v. United States*, No. C-11-0470, 2012 WL 2952084, at *6 (W.D. Wash. June 26, 2012) (noting that the Act relates to commercial sex acts that are necessarily economic in nature and is distinguishable from laws governing gender-motivated crimes).

Even a cursory review of Plaintiff's Amended Complaint leads to the conclusion, as discussed more fully below, that a violation of Section 1591 has not occurred. There are no allegations that Weinstein somehow enslaved Plaintiff when she voluntarily went to Weinstein's hotel room to discuss a role. There are no allegations that Weinstein trafficked Plaintiff for commercial gain. The sexual encounter between Plaintiff and Weinstein described in the Amended Complaint simply does not rise to the type of criminality for which the Government has historically prosecuted under Section 1591, such as child prostitution, torture, and child pornography. It is in this context that the Court should consider the viability of Plaintiff's claims.

A.     The Alleged Facts Do Not Satisfy the "Commercial" Component of the Commercial Sex Act Element

Since 2015, section 1591(a) has provided, in pertinent part, as follows:

(a) Whoever knowingly-

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described

in violation of paragraph (1) knowing, ... that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used *to cause the person to engage in a commercial sex act*, ... shall be punished as provided in subsection (b).

(Emphasis added).

Section 1591 was designed to target organized sex-trafficking rings or ventures that profit from illicit sex trade. "[I]n the most sterile terms, the statute covers the situation where a U.S. citizen engages in a commercial transaction through which money is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006), *cert. denied,* 549 U.S. 1343 (2007). "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591 (e)(3).

What Plaintiff describes in her Amended Complaint is not unlawful commercial and economic activity as proscribed by the sex trafficking statute she sues under, but purported unwanted sexual activity. *Cf. United States v. Morrison,* 529 U.S. 598, 613, 120 S. Ct. 1740, 1751 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity."). Here, Plaintiff fails to allege that a "commercial transaction through which money is exchanged for sex acts" occurred. *Clark, supra.* While Plaintiff's Amended Complaint is replete with salacious details regarding alleged sexual activity between Plaintiff and Weinstein, and quotes the more tantalizing details from the complaint filed against Defendants by the Attorney General of the State of New York (allegations of which Plaintiff lacks any personal knowledge), it fails to allege that money or an item of value was exchanged for the

purported sex act.

To constitute a commercial sex act, the transaction must be economic in nature. *United States v. Campbell,* 111 F. Supp.3d 340, 345 (W.D.N.Y. 2015) (citing *United States v. Paris*, 2007 WL 3124724, * 8 (D. Conn. Oct. 24, 2007) (Droney, J.)). In the context of the definition of "commercial sex acts" in subsection (f)(2), the court in *United States v. Reed*, 2017 WL 3208458, *10 (D.D.C. July 27, 2017), cited the Supreme Court's explanation of "economics" in *Gonzales v. Raich,* 545 U.S. 1, 25, 125 S. Ct. 2195, 2210 (2005), in which the Court found that "'Economics' refers to the production, distribution, and consumption of commodities." The *Reed* court elaborated with respect to an analogous statute criminalizing the transportation of minors, 18 U.S.C. § 2423:

> . . . Congress made factual findings that there exists a global marketplace for sexual exploitation of children, in which children are trafficked across borders for the purpose of prostitution, pornography production, and other forms of sexual abuse, and in which Americans are participating as customers. . . . In that marketplace, the act of engaging in sexual intercourse with a child is the "commodity" for sale. In its simplest terms, Section 2423(c) prohibits the exchange of a thing of value for a particular commodity—a quintessential regulation of *economic* activity.

2017 WL 3208458, *10 (emphasis added).

The case of *Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.,* 2013 WL 6816174, * 16 (W.D. Ark. Dec. 24, 2013), which involved evangelist Tony Alamo, is particularly instructive. In *Kolbeck*, the defendants were entitled to summary judgment on the plaintiffs' Section 1595 claim because the plaintiffs failed to show that their "living expenses were paid as some sort of *quid pro quo* for the sex acts that occurred with Alamo." As the court noted, the plaintiffs failed "to establish

that they deliberately accepted anything of value (*i.e.*, payment of living expenses) *in exchange for* having sex with Alamo." *Id.*, n. 14 (emphasis original). Likewise, the fact that defendants had their expenses paid by Alamo's ministry did not demonstrate that they "were compensated 'on account of' the sex acts." As the court held, "[i]n sum, Plaintiffs offer no evidence of a causal relationship between the sex acts and the payment of expenses," as required to establish a violation of 18 U.S.C. § 1591. *Id.*

In this case, there are no allegations of a *quid pro quo* between Weinstein and Plaintiff whereby anything of value was given or received by either party for sex.[4] Although Plaintiff alleges, in paragraph 37 of the Amended Complaint, that she "reasonably understood" Weinstein's request that she "relax" and have sex with him to mean that she would benefit "from his influence and connections to advance her career," any such promise was illusory. She does not identify a particular role in a particular project that was not only promised, but rather "deliberately accepted ... in exchange for having sex with" Weinstein. *See Kolbeck, supra.* Plaintiff also repeatedly states in the Amended Complaint that Weinstein "assured" Plaintiff that "everything will be taken care of for her" (AC, ¶¶29, 37, 42, 44), but Plaintiff fails to allege *what* exactly would be "taken care of for her," which could include anything

---

[4]    The types of acts that courts have found constituted "commercial sex acts" under Section 1591 include advertising the availability of a minor for sex on the internet and transporting the minor to different states to engage in the sexual activity (*United States v. Gemma*, 818 F.3d 23 (1st Cir.), *cert. denied,* 137 S. Ct. 410 (2016)); having the victim sign a "sex slavery contract" and advertising torture sessions of the victim online (*United States v. Cook*, 782 F.3d 983 (8th Cir.), *cert. denied,* 136 S. Ct. 262 (2015)); "selling" the victim for $300 to have sex with a madam's customers (*United States v. Tutstone*, 2013 WL 1811278 (6th Cir. Apr. 30, 2013)); and providing crack cocaine to the victim on a daily basis in exchange for sex (*Ditullio v. Boehm*, 662 F. 3d 1091, 1095 (9th Cir. 2011)).

from facilitating an interview with a director, to validating her parking ticket, to entering into an emotionally supportive friendship. These facts, which must be considered true for purposes of this motion to dismiss, do not form a claim for sex trafficking because there was no causal connection between the alleged sex acts and an economic benefit to either Plaintiff or Weinstein. There simply was no economic activity in the hotel room in Cannes.

Weinstein anticipates Plaintiff will argue that the ambiguous remark made by an unnamed producer for Defendant TWC that "'they would work' with her further" (AC, ¶31), which was then allegedly followed by Weinstein "groping" Plaintiff's breasts, is sufficient to establish a causal relationship between the sex act and an exchange of an item of value. *See United States v. Marcus,* 487 F. Supp.2d 289, 306-07 (E.D.N.Y. 2007) (stating that the use of the phrase "on account of which" in Section 1591(e)(3) "suggests that there merely needs to be a causal relationship between the sex act and an exchange of an item of value," but that the focus is "whether a given individual has been sexually exploited for profit"), *vacated on other grounds,* 538 F.3d 97 (2d Cir. 2008)). However, Plaintiff all but concedes that nothing of value was given to Plaintiff and deliberately accepted in exchange for any sex act. In paragraph 28 of the Amended Complaint, Plaintiff alleges that she went to Weinstein's hotel room "because of" the "*potentially* lucrative relationship" with Weinstein and Defendant TWC. (Emphasis added.) Plaintiff merely alleges in paragraph 32 that she complied with Weinstein's sexual advances "because of the tangible and intangible benefits" she would "only receive from *a favorable relationship with*" Weinstein. (Emphasis

added.)  Engaging in a "potentially lucrative" or "favorable relationship with" a defendant is not comparable to engaging in a commercial sex act under Section 1591(e)(3).

## B.   The Facts Alleged Do Not Describe "Sex Acts" as Required by Section 1591

Plaintiff's allegations are also deficient to satisfy the requirements of Section 1591 as they pertain to "sex acts."  Although the Act defines the "commercial" component of the commercial sex act element, it provides no corresponding definition of "sex act." The phrase is not a term of art. However, the provisions that outlaw other sex offenses within the special maritime and territorial jurisdiction of the United States do define the term "sexual act" as distinct from "sexual contact." *Compare* 18 U.S.C. § 2246(2) (defining "sexual act")[5] *with* 18 U.S.C. § 2246(3) (defining "sexual contact")[6].  *None* of the acts which are alleged to have occurred during Plaintiff's encounter with Weinstein meet the definition of "sexual act."  Specifically, Plaintiff claims that Weinstein "groped her breasts," rubbed Plaintiffs' breasts and buttocks, "pulled down" Plaintiff's shirt, masturbated in front of her, and placed Plaintiff's hand on his penis and "forced" Plaintiff to masturbate him.  AC, ¶¶ 32-37.  Even if all these

---

[5] "[T]he term 'sexual act' means- (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

[6] "[T]he term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

allegations were true, the actions Plaintiff describes are not "sexual acts" as defined by 18 U.S.C. § 2246(2), mainly because there was no penetration and/or contact between Weinstein's and/or Plaintiff's genitals and mouths.

Plaintiff should not be able to pursue her lawsuit based on alleged facts that clearly do not support a claim for sex trafficking. Thus, Plaintiff's Count I against Weinstein should be dismissed with prejudice. The additional allegations of the Amended Complaint—which include mostly quotations from the Attorney General's complaint—do not correct the deficiencies in what Plaintiff alleged in her original Complaint.

## C. Weinstein's Purported Misconduct Was Not Actionable under the Statute in Effect in February 2014

The Amended Complaint also fails to allege sufficient facts to trigger application of the version of Section 1591 in effect in February 2014 when the alleged misconduct occurred. At that time, Section 1591(a)(1) subjected an individual who knowingly "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person" to criminal and civil liability. The current version of the statute was amended in 2015 to add "advertises, maintains, patronizes, or solicits" as proscribed conduct. Congress amended the statute to include "patronizes" and "solicits" because there was some "confusion" as to whether the statute applied to persons "who purchased illegal sex acts with trafficking victims" and Congress

wanted to make clear that the *purchase* of sexual acts from human trafficking victims is subject to Section 1591.[7]

Here, the facts alleged in the Complaint do not cast Weinstein as one who solicited a commercial sex act from Plaintiff. According to the Complaint, Weinstein invited Plaintiff to his hotel room to watch her reel—which they did watch—and not to engage in commercial sex. AC, ¶¶28. There is no allegation that Weinstein "purchased" Plaintiff and/or that she was an illegal sex worker or human trafficking victim, whom the statute is designed to protect, *at the time she willingly went to Weinstein's hotel room*. Plaintiff implicitly requests this Court to interpret the sex trafficking statute to criminalize the types of sexual encounters that occur regularly, rightly or wrongly, in human interaction. Query whether an individual who treats a person to a free dinner and a movie (an "item of value"), promises future outings and/or gifts, and then attempts and/or engages in what he or she construes as consensual sexual activity, could be prosecuted under Section 1591 as a "sex trafficker." The answer would be "no." Is this hypothetical scenario any different than a movie producer agreeing to watch a film reel from an aspiring model-turned-actress, and then actually watching the reel, after which sexual activity ensues?

---

[7] https://www.congress.gov/bill/114th-congress/senate-bill/178. The drafters of the bill amending Section 1591 cited to *United States v. Jungers,* 702 F.3d 1066 (8th Cir. 2013), which ruled that Section 1591 applied to persons who purchase illicit sexual acts after the District of South Dakota court had granted a motion to acquit the defendants. The defendants had traveled to South Dakota to purchase sex with 14 and 11 year-old girls who had been advertised as available, not knowing that law enforcement had set up a sting operation. *Id.*

Certainly the statute was not drafted for such broad application and should not be so construed here.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Defendant Harvey Weinstein respectfully requests that the Court grant his motion to dismiss Plaintiff's Amended Complaint as to him with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) in all respects.

Dated:  Los Angeles, California
      March 27, 2018

KUPFERSTEIN MANUEL LLP

*/s/ Phyllis Kupferstein*
Phyllis Kupferstein
865 S. Figueroa St.
Suite 3338
Los Angeles, California 90017
(213) 988-7531 – Telephone
(213) 988-7531 – Telefax
pk@kupfersteinmanuel.com

MORRISON COHEN LLP
Mary E. Flynn
909 Third Ave.
New York, New York 10022
(212) 735-8600 – Telephone
(212) 735-8708 – Telefax
mflynn@morrisoncohen.com

*Attorneys for Defendant*
*Harvey Weinstein*