UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KADIAN NOBLE,<br><br>   Plaintiff,<br><br> v.<br><br>HARVEY WEINSTEIN, BOB WEINSTEIN, and THE WEINSTEIN COMPANY,<br><br>   Defendants. | Case No.: 17-cv-09260-RWS<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT HARVEY WEINSTEIN'S MOTION TO DISMISS COUNT I OF PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |

Phyllis Kupferstein
Roxanna A. Manuel
KUPFERSTEIN MANUEL LLP
865 South Figueroa Street, Suite 3338
Los Angeles, California 90017
(213) 988-7531

Mary E. Flynn
Aaron M. Schue
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant Harvey Weinstein*

Defendant Harvey Weinstein ("Weinstein"), through his attorneys Kupferstein Manuel LLP and Morrison Cohen LLP, hereby respectfully submits this reply memorandum of law in support of his motion to dismiss the first Count of Plaintiff Kadian Noble's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

The plain meaning of The Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 1591 (the "Act" or "section 1591"), supports dismissal of Plaintiff's sex trafficking claim. As set forth in the moving papers, Plaintiff cannot state a viable claim for relief because the facts alleged in the Amended Complaint do not give rise to a violation of the sex trafficking statute. Simply put, there are no allegations that Plaintiff engaged in a commercial sex act with Weinstein. Even the most liberal interpretation of the Amended Complaint suggests only that purported unwanted sexual activity occurred in the hotel room in Cannes, but even those facts do not trigger a Section 1591 violation—especially when the alleged sexual activity did not involve a "sex act" under the statute. Thus, this Court should grant Weinstein's Motion and dismiss Count I of the Amended Complaint with prejudice.

## ARGUMENT

### I. NO COMMERCIAL SEX ACT OCCURRED WITHIN THE "PLAIN MEANING" OF THE STATUTE

Plaintiff should not be permitted to bootstrap an alleged unwanted sexual encounter into a sex trafficking claim under federal law. In her opposition brief, Plaintiff repeatedly requests the Court to consider the "plain meaning" of Section 1591 in order to defeat Weinstein's motion. However, the plain meaning of the statute

sufficiently impedes any notion that Plaintiff has alleged criminal sex trafficking against Weinstein and others.

Weinstein does not contend that Section 1591 is ambiguous. To allege a claim for a civil remedy arising out of this criminal statute, however, the complaining party must nevertheless plead facts showing that a violation occurred. The Amended Complaint is deficient in this regard. It does *not* allege that Weinstein used "means of force, threats of force, fraud, [or] coercion" when he invited Plaintiff to his hotel room to watch her audition reel. *See* Section 1591(a)(2). Plaintiff admits she went to the room voluntarily (AC, ¶¶28-29), *not* because she felt coerced or misled into doing so. *See also* Opposition, p. 14 (". . . Kadian willingly went to Harvey Weinstein's hotel room."). Further, nowhere in the Amended Complaint does Plaintiff allege that, once she went to the hotel room, Weinstein forced her to engage in a <u>commercial</u> sex act <u>because neither money nor anything of value was exchanged</u>, as required by the Act. *Id.*, § 1591 (e)(3) (defining "commercial sex act" as "any sex act, on account of which *anything of value is given to or received* by any person") (emphasis added); *see also United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006), *cert. denied,* 549 U.S. 1343 (2007).

In her response, Plaintiff erroneously argues that Weinstein contends the statute's proscribed conduct should be more narrowly interpreted than its plain meaning. In support of this argument, Plaintiff relies exclusively on cases in which the victims were smuggled into the United States for purposes of prostitution, enslaved, given drugs for sex, or were juveniles. Plaintiff does not cite to a single case

where, as in this case, an adult voluntarily associated with another based on an illusory promise of a future benefit; alleged unwanted sexual activity ensued; the adult later sought to enforce the illusory promise of the future benefit, and then sued years later under the federal sex trafficking statute.[1] Nor could she, because no such case exists.

Instead, Plaintiff relies on *United States v. Estrada-Tepal*, 57 F. Supp.3d 164 (E.D.N.Y. 2014), a criminal case that arose out of the defendants' acts of smuggling women from Mexico to the United States to work as prostitutes.[2] *Estrada-Tepal* did not address the meaning of commercial sex act or its application to facts similar to the allegations in Plaintiff's Amended Complaint; rather, the Court addressed, and rejected, the defendants' challenge as to the scope of the statute on constitutional grounds, which they claimed was overbroad because it could impinge on one's right to intimate association. The Court did discuss "commercial sex" in the context of intent, noting that the statute requires the defendant's knowledge

> that the victim will be caused to have underage or coerced commercial sex. *See United States v. Todd,* 627 F.3d 329, 334 (9th Cir. 2010) (discussing the elements of the statute and, with respect to mens rea, stating that "the statute requires . . . that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person *to engage in prostitution*").

---

[1] Plaintiff alleges that during the two years following the hotel room incident, she sought out Weinstein and a TWC assistant at social functions and asked about the elusive film role, but eventually was given the cold shoulder. AC, ¶¶41-42 & 44-46.

[2] Unlike Plaintiff's alleged visit to Weinstein's hotel room in Cannes to show him her audition reel, at least one of the victims in *Estrada-Tepal* was forced to work as a prostitute in Queens for *four years* to repay the cost of being smuggled to the United States, and another victim was told that, after she ran away, "something [bad] was going to happen to her or her family" if she did not return. 57 F. Supp.3d at 166.

3

57 F. Supp. 3d at 169-170 (emphasis added). The cases beg the question: does Plaintiff here contend that she was caused to engage in prostitution?

Plaintiff's reliance on *United States v. Townsend,* 521 Fed. Appx. 904 (11th Cir. 2013), another criminal case, is similarly misplaced and presents facts wholly dissimilar to those at issue here. In *Townsend*, the defendant claimed that the statute does not apply to "willingly-recruited prostitutes." The Court rejected that argument on the grounds that at least one of the victims claimed that she chose to stay with the defendant "out of fear after he beat and raped her," and that the other victim was forced to stay and engage in prostitution out of fear of the defendant, who took her belongings, including her passport, beat her, and raped her. *Id.* at 906-07. In this case, there are no allegations of continued physical abuse by Weinstein or that Plaintiff feared for her life. In fact, Plaintiff alleges that *she* continued to seek out Weinstein and his people for up to two years following the 2014 hotel room encounter. AC, ¶¶41-42 & 44-46.

In addition, Plaintiff essentially ignores Weinstein's contention that there are no allegations of a *quid pro quo* because the alleged promises of things of value were, at best, illusory. Citing no case law, she claims that there "can be no question" that "promises of a film role and the wielding of an entertainment mogul's significant influence" are "things of enormous value." Opposition, p. 12. But this assertion is expressly belied by the allegations in the Amended Complaint. In paragraph 28, Plaintiff alleges that she went to Weinstein's hotel room "because of" the "*potentially* lucrative relationship" with Weinstein and Defendant TWC. (Emphasis added.) By

4

this allegation, Plaintiff concedes the "entertainment mogul's significant influence" is only "potential." Further, Plaintiff *does not* allege that she "complied" with Weinstein's alleged groping because he promised her a film role. Instead, she alleges she did so because she sought a "favorable relationship" with him. AC, ¶ 32. Plaintiff erroneously goes on to conflate Weinstein's alleged "fraudulent" promises (the film role never materialized) with a "thing of value" required to have been exchanged under the Act. As stated in the moving papers, engaging in a "potentially lucrative" or "favorable relationship with" a defendant is *not* comparable to engaging in a commercial sex act under Section 1591(e)(3), ), and a purported promise of an illusory, future benefit is not a "thing of value."[3]

Plaintiff's attempt to distinguish *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, *16 (W.D. Ark. Dec. 24, 2013), cited in the moving papers, also fails. In that case, the Court granted summary judgment in favor of the defendants on the plaintiffs' civil sex trafficking claim under 18 U.S.C. Section 1595 because the plaintiffs, "spiritual wives" of televangelist Tony Alamo, were unable to show that their living expenses were paid "as some sort of *quid pro quo* for the sex acts that occurred with Alamo." In her opposition, Plaintiff contends that *Kolbek* is distinguishable because she does allege a *quid pro quo,* citing AC ¶ 55

---

[3] Plaintiff herself does not seem sure whether there was a "promise" of a film role. *Compare* Complaint, ¶10 and AC ¶16 (Weinstein had a "role in mind" for her) *with* Complaint, ¶12 and AC ¶19 (Weinstein "promised Kadian the role in the TWC project"), *with* Complaint ¶14 (Weinstein asked plaintiff to his room to "discuss further steps in securing the role he had previously targeted for her"), and *with* AC ¶27 (Weinstein asked plaintiff to his room to "discuss further steps regarding the role he had promised her").

5

presumably for her allegation that Weinstein made a "promise to her of a film role and use of his influence on her behalf." Opposition, p. 13. Plaintiff further contends that her claims are analogous to those alleged in *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

There is no similarity between the allegations in this case and the facts alleged in *Ditullio*, however.[4] First, in *Ditullio*, the victims were juveniles, not an adult. Second, the defendant had pleaded guilty to one count of conspiracy to engage in human trafficking. Third, and most importantly, the defendant admitted that he did not merely *promise* to provide money or drugs to the juvenile victims, but had actually given the plaintiff crack cocaine on a daily basis so that he could have sex with her whenever he wanted. *Id.* at 1095. Plaintiff here does not allege that she received anything of value—neither money nor drugs, like the minors in *Ditullio*—from Weinstein.

Therefore, Plaintiff's allegations, which must be considered true for purposes of this motion to dismiss, do not sufficiently plead commercial and/or economic sexual activity between her and Weinstein.

## II. PLAINTIFF'S ATTEMPT TO EXPAND THE DEFINITION OF "SEX ACTS" UNDER SECTION 1591 FAILS

Although Section 1591 defines "commercial sex act," it does not provide any guidance as to what constitutes a sex act. That element is defined in 18 U.S.C. §

---

[4] The issue before the Ninth Circuit in *Ditullio* was whether the civil remedy provision of the Act could be applied retroactively, which was a matter of first impression for the Court. 662 F.3d at 1093.

2246(2), an analogous statute concerning sexual abuse. Plaintiff claims that no sex act needed to have occurred between her and Weinstein in order to seek a civil remedy under the sex trafficking statute. Plaintiff's cited authorities do not support this proposition.

For example, at page 10 of her opposition, Plaintiff cites to *United States v. Garcia-Gonzales,* 714 F.3d 306 (5th Cir. 2013), a child sex trafficking case, which is inapposite to the facts present here. Under Section 1591(a), a crime occurs if the victim "has not attained the age of 18 years" (in *Garcia-Gonzales*, one of the victims was 14) and "*will be caused* to engage in a commercial sex act." In contrast, where the alleged victim is an adult, the defendant's conduct must "*cause the person to engage* in a commercial sex act." The other cases cited by Plaintiff; *i.e., United States v. Corley*, 679 Fed. Appx. 1 (2d Cir. 2017), and *United States v. Hornbuckle*, 784 F.3d 549 (9th Cir. 2015), also are criminal cases arising from sex trafficking of minors. Thus, even if these cases suggest that a "sex act" does not have to occur for a defendant to be charged criminally where the victim is a minor, they do not suggest that the different wording relating to adult victims permits a violation to be found when no sex act actually occurs. Further, *Corley* should not be considered by this Court as having precedential value because it is a ruling by summary order.

### III. THE ALLEGED ACTIONS THAT OCCURRED IN FEBRUARY 2014 ARE NOT SUBJECT TO SECTION 1591

As discussed in the moving papers, in February 2014, Section 1591(a)(1) subjected an individual who knowingly "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person" to criminal and civil liability.

7

Congress amended Section 1591 to add "advertises, maintains, patronizes, or solicits" as proscribed conduct. Plaintiff does not dispute the statutory construction. However, Plaintiff doubles down on her allegation that the statute in effect in February 2014 governs Weinstein's conduct, conceding that (1) she "does not seek to hold [Weinstein] liable as the purchaser of an illegal sex act from a prostitution enterprise"; and (2) "it does not matter that [Weinstein] is not alleged to have solicited a commercial sex act in the traditional sense." Opposition, p. 14. But Plaintiff does not allege that Weinstein recruited, enticed, harbored, transported, provided, obtained, or maintained her by any means. At most, Plaintiff seeks to hold Weinstein liable for purchasing or soliciting sex from her, which is not supported by the allegations in the Amended Complaint or the statute as then in effect.

Thus, Plaintiff cannot have it both ways. The encounter in the hotel room between Plaintiff and Weinstein was not criminal, despite Weinstein's influence in the entertainment industry and Plaintiff's desire to become famous. The statute does not contain a provision criminalizing sexual activity between adults simply because one of the adults had power and influence.

## CONCLUSION

For the reasons set forth above and in the moving papers, Defendant Harvey Weinstein's motion to dismiss Plaintiff's Complaint as to him with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) should be granted in all respects.

Dated: Los Angeles, California
April 24, 2018

KUPFERSTEIN MANUEL LLP

*/s/ Phyllis Kupferstein*
Phyllis Kupferstein
865 S. Figueroa St.
Suite 3338
Los Angeles, California 90017
(213) 988-7531 – Telephone
(213) 988-7531 – Telefax
pk@kupfersteinmanuel.com


MORRISON COHEN LLP
Mary E. Flynn
909 Third Ave.
New York, New York 10022
(212) 735-8600 – Telephone
(212) 735-8708 – Telefax
mflynn@morrisoncohen.com

*Attorneys for Defendant*
*Harvey Weinstein*