UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KADIAN NOBLE,

|  |  |
|---|---|
| KADIAN NOBLE,<br><br>Plaintiff,<br><br>v.<br><br>HARVEY WEINSTEIN, BOB WEINSTEIN, THE WEINSTEIN COMPANY, LLC, and WEINSTEIN COMPANY HOLDINGS, LLC,<br><br>Defendants. | Case No.: 1:17-cv-09260-RWS<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT ROBERT WEINSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

SCHULTE ROTH & ZABEL LLP

Barry A. Bohrer
Gary Stein
Brian T. Kohn
Carly J. Halpin
919 Third Avenue
New York, New York 10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Defendant Robert Weinstein*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

SUMMARY OF ALLEGATIONS ........................................................................................... 3

ARGUMENT ............................................................................................................................. 5

I.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. WEINSTEIN
     FOR PARTICIPATING IN A COMMERCIAL SEX TRAFFICKING VENTURE.......... 6

     A.   Plaintiff Does Not Adequately Allege that Mr. Weinstein Actually
          Participated in Any Commercial Sex Trafficking Venture ......................... 8

     B.   Plaintiff Does Not Adequately Allege that Mr. Weinstein Benefitted
          From Participation in Any Sex Trafficking Venture. ............................... 10

     C.   Plaintiff Does Not Adequately Allege that Mr. Weinstein Had
          Knowledge of Any Sex Trafficking Venture............................................ 11

II.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. WEINSTEIN
     FOR AIDING AND ABETTING COMMERCIAL SEX TRAFFICKING.................... 13

     A.   The TVPA Does Not Recognize Claims for Aiding and Abetting
          Primary Violations. .................................................................................... 13

     B.   Plaintiff Does Not Adequately Allege that Mr. Weinstein Aided and
          Abetted Harvey Weinstein's Alleged Commercial Sex Acts. ................... 14

III. THE SEX TRAFFICKING STATUTE DOES NOT APPLY IN THE
     CIRCUMSTANCES ALLEGED IN THE COMPLAINT. ........................................... 15

     A.   The Complaint Does Not Plead the Existence of a Sex Trafficking
          Venture........................................................................................................ 17

     B.   The Complaint Does Not Plead the Occurrence of "Commercial" Sex
          Acts. ............................................................................................................ 18

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................5, 6, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................5, 6, 15

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012)....................................................................................15

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
    754 F.2d 57 (2d Cir. 1985).......................................................................................14

*Cabusao v. Lombardi*,
    No. 1:14CV74-HSO-RHW,
    2015 U.S. Dist. LEXIS 185609 (S.D. Miss. Jan. 30, 2015) ....................................11

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)............................................................................................13, 14

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)................................................................... 9-10

*Feinberg v. Katz*,
    No. 99 Civ. 45(CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002).....................18

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)....................................................................................17

*Foster v. 2001 Real Estate*,
    No. 14 Civ. 9434 (RWS), 2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015).............17

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011).....................................................................................6

*Hardy v. Daly*,
    No. 16 Civ. 8443 (RWS), 2017 WL 3917162 (S.D.N.Y. Sept. 5, 2017)............. 5-6

*Jean-Charles v. Perlitz*,
    937 F. Supp. 2d 276 (D. Conn. 2013).....................................................................14

*Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.*,
    No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ..........................19

*Lawson v. Rubin*,
No. 17-cv-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ......................... 10-13

*Mastafa v. Chevron Corp.*,
759 F. Supp. 2d 297 (S.D.N.Y. 2010),
*aff'd*, 770 F.3d 170 (2d Cir. 2014) .................................................................................13

*McIntosh v. United States*,
No. 14-CV-7889 (KMK), 2016 WL 1274585 (S.D.N.Y. Mar. 31, 2016) ..............................12

*Nat'l Grp. for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y. 2006) ........................................................................... 17-18

*Todd v. United States*,
No. C11-0470 (JLR)(MAT) CR07-395(JLR),
2012 WL 2952084 (W.D. Wash. June 26, 2012) ..................................................................16

*Unites States v. Afyare*,
632 F. App'x 272 (6th Cir. 2016) .......................................................................7, 8, 9, 11, 17

*United States v. Campbell*,
111 F. Supp. 3d 340 (W.D.N.Y. 2015) ...............................................................................19

*United States v. Clark*,
435 F.3d 1100 (9th Cir. 2006) ...........................................................................................16

*United States v. Evans*,
476 F.3d 1176 (11th Cir. 2007) .........................................................................................15

*United States v. Flanders*,
752 F.3d 1317 (11th Cir. 2014) ............................................................................................9

*United States v. Marcus*,
487 F. Supp. 2d 289 (E.D.N.Y. 2007),
*rev'd on other grounds*,
538 F.3d 97 (2d Cir. 2008) ...............................................................................................19

*United States v. Morrison*,
529 U.S. 598 (2000) ..........................................................................................................16

*United States v. Todd*,
627 F.3d 329 (9th Cir. 2010) .........................................................................................11, 19

*United States v. Walls*,
784 F.3d 543 (9th Cir. 2015) .......................................................................................... 19-20

**Statutes & Rules**

18 U.S.C. § 1591 *et seq.*.................................................................... *passim*

18 U.S.C. § 1961 ...................................................................................17

22 U.S.C. § 7101 ...................................................................................15

Fed. R. Civ. P. 12(b)(6).......................................................................1, 5

Defendant Robert Weinstein respectfully submits this memorandum of law in support of his motion to dismiss the claims against him (Counts III and V) in Plaintiff's Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This action arises from an alleged sexual assault committed against plaintiff Kadian Noble ("Plaintiff") by defendant Harvey Weinstein in Cannes, France in 2014. According to the Complaint, Harvey Weinstein lured Plaintiff to his hotel room in Cannes with vague promises of a potential film role and, once she was there, proceeded to engage in a sex act against her will, but which she allowed him to complete in the hope that he would advance her career. Plaintiff further alleges that Harvey Weinstein never delivered on his promises to give her a role in one of his films.

Rather than sue Harvey Weinstein for assault or, perhaps, breach of contract or fraud, Plaintiff instead brings this action under the federal Trafficking Victims Protection Act ("TVPA"), claiming she was the victim of "commercial sex acts" perpetrated by Harvey Weinstein. And not content with just seeking redress from her alleged attacker, Plaintiff also asserts commercial sex trafficking claims against Harvey Weinstein's employer, The Weinstein Company ("TWC"), and Robert Weinstein ("Mr. Weinstein"), who is Harvey Weinstein's younger brother and former business partner at TWC. Plaintiff accuses Mr. Weinstein of (i) participating in a purported "commercial sex act venture" operated by Harvey Weinstein, and (ii) aiding and abetting Harvey Weinstein's alleged "commercial sex acts" with Plaintiff.

The claims asserted against Mr. Weinstein are utterly groundless and fatally defective as a matter of law. As set forth below, the Complaint does not allege a single action by Mr. Weinstein, let alone an action even remotely related to the alleged commercial sex

trafficking venture.  Nor does Plaintiff allege that Mr. Weinstein played *any* role in her alleged

assault or, indeed, that he had any communications with or about her or even knew who she was.

Under the familiar *Twombly/Iqbal* standard, the total lack of non-conclusory factual allegations

relating to Mr. Weinstein mandates dismissal of both of Plaintiff's claims against him.

       First, Plaintiff's claim against Mr. Weinstein for participating in Harvey

Weinstein's alleged commercial sex trafficking venture fails because the Complaint does not

sufficiently plead any of the essential elements of such a claim.  Specifically, the Complaint fails

to plausibly allege (i) that Mr. Weinstein committed any act in furtherance of the venture

(indeed, it contains no allegations at all about Mr. Weinstein's conduct); (ii) that Mr. Weinstein

knowingly benefitted in any way from Harvey Weinstein's sex acts; or (iii) that Mr. Weinstein

knew about any commercial sex trafficking venture or that Harvey Weinstein had used force,

fraud, or coercion to compel Plaintiff (or any other woman) to engage in sex acts with him.

       Second, Plaintiff's aiding and abetting claim must be dismissed as a matter of law

for the simple reason that the TVPA does not authorize claims for aiding and abetting.  And even

if that were not the case, dismissal still would be warranted because the Complaint does not

allege that Mr. Weinstein had knowledge of Harvey Weinstein's alleged sexual misconduct with

Plaintiff or that he substantially assisted it in any way.

       Moreover, the above arguments all assume that the Complaint adequately pleads

an underlying violation of the TVPA by Harvey Weinstein, which it does not and cannot, given

that Congress never intended for the statute—designed to prevent slavery and sexual exploitation

for commercial gain—to apply to the type of allegations asserted in the Complaint.

       For these and the additional reasons set forth below, the Court should dismiss

Counts III and V of the Complaint against Mr. Weinstein.

2

## <u>SUMMARY OF ALLEGATIONS</u>

Plaintiff, a resident of the United Kingdom, alleges that she was an aspiring actress who met Harvey Weinstein in London in or about February 2014 and that he told her he had a film role in mind for her.  (¶¶ 15-16.)[1]  At the Cannes Film Festival in May 2014, the Complaint alleges, Harvey Weinstein used the promise of a film role to lure Plaintiff into his hotel room, where he sexually assaulted her.  (¶¶ 26-39.)  Thereafter, Plaintiff sought to follow up on Harvey Weinstein's promise of a film role, seeing him on three other occasions in London and Cannes up until May 2016, when she decided he had no intention of making good on his promise.  (¶¶ 40, 42, 44, 46.)  Plaintiff's interactions with Harvey Weinstein and other TWC employees over this more than two-year period are set forth in 34 paragraphs spanning nine pages—the heart of the Complaint's substantive factual allegations.  (¶¶ 15-48.)

Nowhere in those 34 paragraphs does the Complaint make *any* allegations against Mr. Weinstein or *even mention* him.  The Complaint does not allege that Mr. Weinstein ever met or spoke with Plaintiff; that he facilitated, knew about, was present for or had anything to do with Plaintiff's encounters with Harvey Weinstein in Cannes or London or her interactions with other TWC employees; that he had any involvement in the film project that Harvey Weinstein allegedly discussed with Plaintiff or knew that Harvey Weinstein had promised her a role in a film; or that he even was aware of Plaintiff's existence.

Mr. Weinstein's name only appears in three places in the Complaint.  *First*, in the "Parties and Jurisdiction" section, the Complaint alleges that Mr. Weinstein is a New York resident, a co-founder and Chairman of TWC, and the owner of 42 percent of TWC's equity.  (¶

---

[1] Citations in the form "¶" refer to paragraphs of the Complaint ("Compl.").  [ECF No. 48.]

4.)  The allegations concerning Mr. Weinstein's residence and ownership stake in TWC are

inaccurate, although those inaccuracies are irrelevant for purposes of this Motion.[2]

   *Second*, Mr. Weinstein's name appears in a series of four paragraphs at the start of

the "Factual Allegations" section of the Complaint.  (¶¶ 8-11.)  Those paragraphs, however,

consist of a series of entirely conclusory allegations and legal conclusions, which largely

regurgitate various elements of a commercial sex trafficking venture claim and are unsupported

by even a single well-pled allegation of *fact*.

   Specifically, those paragraphs allege that Mr. Weinstein and TWC (i) "had actual

knowledge" of Harvey Weinstein's sexual misconduct (though not with Plaintiff) (¶ 8); (ii)

"were aware" that Harvey Weinstein engaged in that misconduct while abroad and "facilitated"

his trips abroad (¶ 9); (iii) "benefited financially" from Harvey Weinstein's promotion of films

and business-related activities while abroad (*id.*); (iv) "knew or had reason to know" that Harvey

Weinstein was likely to engage in sexual misconduct with women he came into contact with in

the course of his employment (¶ 10); and (v) "knew or recklessly disregarded" that Harvey

Weinstein "would lure young aspiring actresses into compromising situations under the guise of

business meetings" and use "force, fraud or coercion" to cause them to engage in sex acts (¶¶ 10-

11).  But the Complaint does not allege *any* facts as to when or how Mr. Weinstein came to

"know or recklessly disregard" any of these things, or *any* event or communication that provided

him with such knowledge, or *any* act that Mr. Weinstein purportedly committed or "facilitated"

in furtherance of Harvey Weinstein's alleged commercial sex trafficking activities.

---

[2] In fact, Mr. Weinstein is (and was at the time the Complaint was filed) a resident of Greenwich, Connecticut and the owner of 21 percent of TWC.

*Third*, Mr. Weinstein's name appears at the end of the Complaint where Plaintiff sets forth the causes of action (Counts III and V) she is asserting against him. These paragraphs likewise consist of conclusory and boilerplate allegations that largely parrot the language of the commercial sex trafficking statute and the elements of an aiding and abetting claim. (*See* ¶¶ 71-77, 84-87.) In short—outside of bare legal conclusions—the Complaint does not allege that Mr. Weinstein had any role or took even a single action in connection with Harvey Weinstein's alleged commercial sex trafficking venture.[3]

## ARGUMENT

Given the Complaint's threadbare allegations against Mr. Weinstein described above, application of the well-settled motion to dismiss standard requires dismissal of both of the counts Plaintiff has asserted against him. "To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, a complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hardy v. Daly*, No. 16 Civ. 8443 (RWS), 2017 WL 3917162, at *1 (S.D.N.Y. Sep. 5, 2017) (explaining that "'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

---

[3] Additionally, the Complaint attempts to incorporate by reference allegations in a complaint filed against Harvey Weinstein, as well as TWC and Mr. Weinstein, by the New York Attorney General (the "NYAG"). Plaintiff vaguely asserts that the NYAG complaint "makes allegations relating to" TWC's and Mr. Weinstein's "knowledge of and participation in" Harvey Weinstein's "ventures to defraud, force or coerce sexual activities" with women. (¶¶ 12-13; *see also* ¶ 72.) But Plaintiff does not point to any allegation in the NYAG complaint accusing Mr. Weinstein of knowingly participating in a commercial sex trafficking venture, and for good reason: There are no such allegations. That complaint asserts claims against Mr. Weinstein based on alleged violations of New York State and New York City civil and human rights laws relating to gender-based workplace harassment and discrimination. It makes no allegations of commercial sex trafficking. Given that, the NYAG complaint is irrelevant and its incorporation does nothing to remedy Plaintiff's pleading deficiencies.

than labels and conclusions'" and "the factual allegations must 'possess enough heft to show that the pleader is entitled to relief'") (quoting *Twombly*, 550 U.S. at 555, 557).

In considering a motion to dismiss for failure to state a claim, the Court—which must accept well-pleaded allegations as true—may not accept as true any "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *see also Gallop v. Cheney*, 642 F.3d 364, 368-69 (2d Cir. 2011) (where a complaint contains only "conclusory, vague, or general allegations," and is thus supported by only "speculation and conjecture," it "cannot withstand a motion to dismiss").

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Here, as set forth below, Plaintiff's allegations against Mr. Weinstein are precisely the type of unsupported legal conclusions that the Supreme Court explained in *Iqbal* and *Twombly* need not be credited on a motion to dismiss. Other than those unsupported legal conclusions, the Complaint makes no substantive factual allegations against Mr. Weinstein and, accordingly, Counts III and V must be dismissed.

## I.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. WEINSTEIN FOR PARTICIPATING IN A COMMERCIAL SEX TRAFFICKING VENTURE.

In 18 U.S.C. § 1591, the TVPA provides for two separate theories of liability for sex trafficking. As relevant here,[4] § 1591(a)(1) imposes liability on those who recruit, entice, harbor, transport, provide, obtain, or maintain a person to engage in a commercial sex act, while § 1591(a)(2) applies to those who benefit from "participation" in a commercial sex trafficking

---

[4] The TVPA was amended in 2015, after the alleged assault against Plaintiff in 2014. We therefore rely on the 2008 version of the statute, which was in effect at the relevant time.

venture.  Here, Plaintiff has asserted only a "participation" claim against Mr. Weinstein under §

1591(a)(2) in Count III.  (*See* Compl., p. 18 (heading) and ¶ 71.)  Section 1591(a)(2) provides:

> Whoever knowingly –
> . . . .
> (2) benefits, financially or by receiving anything of value, from
> participation in a venture which has engaged in an act described in
> violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that means of force,
> threats of force, fraud, coercion described in subsection (e)(2), or
> any combination of such means will be used to cause the person to
> engage in a commercial sex act, or that the person has not attained
> the age of 18 years and will be caused to engage in a commercial
> sex act, shall be [guilty of a crime].

Accordingly, to state a claim, the Complaint must adequately allege that Mr. Weinstein (i)

knowingly benefitted (financially or by receiving anything of value), (ii) from participation in a

commercial sex trafficking venture, (iii) while knowing (or recklessly disregarding) that means

of force, fraud or coercion would be used to cause the trafficked person to engage in a

commercial sex act.  *See United States v. Afyare*, 632 F. App'x 272, 283 (6th Cir. 2016).

As set forth in Point III below, the Complaint fails to adequately allege the

existence of an underlying commercial sex trafficking venture in which Mr. Weinstein could

have participated.  But even if it did, dismissal of the participation claim against Mr. Weinstein

still would be mandated because the Complaint does not contain a single plausible factual

allegation that (i) Mr. Weinstein did anything to participate in a sex trafficking venture; (ii)

knowingly derived any financial or other benefit from participating in such a venture; or (iii)

knew (or recklessly disregarded) that means of force, fraud or coercion were being used to cause

Plaintiff or anyone else to engage in commercial sex acts.

A.     **Plaintiff Does Not Adequately Allege that Mr. Weinstein Actually Participated in Any Commercial Sex Trafficking Venture.**

First, the Complaint fails to state a claim for participation in a sex trafficking venture against Mr. Weinstein because it does not allege a single act on his part in furtherance of the alleged venture.  *See Afyare*, 632 F. App'x at 282 (holding that a claim under § 1591(a)(2) requires proof "that the defendant actually participated in a sex-trafficking venture").  Here, the Complaint contains no allegations whatsoever regarding Mr. Weinstein's conduct, let alone allegations that he did anything to further or participate in a commercial sex trafficking venture.

In *Afyare*, a criminal case brought under the TVPA, the Sixth Circuit affirmed the District Court's holding that "'mere membership in the gang or association of two or more [d]efendants [i]s insufficient to prove a venture under Section 1591(a)(2) and to be a [a] participant in the venture, the [prosecution] ha[s] to prove that the [d]efendant committed an 'overt act' to advance the sex trafficking activities charged.'"  632 F. App'x at 283.  To illustrate its reasoning, the court posited a hypothetical case in which

> a hypothetical defendant [] joins a soccer team with some sex traffickers, who sponsor the team financially (i.e., pay for travel accommodations, uniforms and equipment, training, etc.) using the money they generate from sex trafficking activities.  And assume that the sex traffickers do not conceal the source of this money from the rest of the team, such that our defendant knows (or recklessly disregards clear knowledge) that his teammate-sex-trafficker-sponsors are engaged in sex trafficking.

*Id.* at 286.  Under this scenario, the court found, the prosecution could meet the elements of knowledge and benefit, but the prosecution still would fail because the hypothetical defendant would not have "participated" in the venture by virtue of his membership on the soccer team:

> We agree with the district court and find that § 1591(a)(2) targets *those who participate in sex trafficking*; it does not target soccer players who turn a blind eye to the source of their financial sponsorship. As a result, in this example, we would require the prosecution to prove that the defendant *actually participated* in

> a *sex-trafficking venture.* We would find it irrelevant that he played
> on a soccer team with sex traffickers (or frequented a restaurant
> with them or carpooled with them) and would exclude that
> evidence as irrelevant.

*Id.* (emphasis added).

Specifically, the Sixth Circuit explained that the hypothetical soccer player—despite his actual knowledge of his teammates' sex trafficking venture and the benefits he received from it—could not be liable for participating in such a venture based on his "'mere negative acquiescence.'" *Id.* Instead, the soccer player only could be liable under § 1591(a)(2) if he "actually participated in the sex-trafficking venture," for example, by collaborating with his sex trafficking teammates "for the purpose of furthering the sex trafficking." *Id.*

By contrast, where courts have found claims under § 1591(a)(2) for participating in a sex trafficking venture viable, the allegations (or evidence) demonstrated defendant's significant involvement in furthering the venture. *See, e.g., United States v. Flanders*, 752 F.3d 1317, 1330-32 (11th Cir. 2014) (finding sufficient evidence to uphold conviction under § 1591(a)(2) because, among other things, defendant had aided in the creation and attempted sale of pornographic films in which his co-defendant had sex with incapacitated women).

Here, even assuming, *arguendo*, that Harvey Weinstein was engaged in commercial sex trafficking, the Complaint still does not allege that Mr. Weinstein "actually participated" in a sex trafficking venture or, in fact, took *any* action for the purpose of "furthering it." *See Afyare*, 632 F. App'x at 286. Plaintiff's vague and conclusory allegations that Mr. Weinstein "facilitated" Mr. Weinstein's travel abroad on TWC business (¶¶ 9, 76) are woefully insufficient. *See, e.g., Doe v. Alsaud*, 12 F. Supp. 3d 674, 679 (S.D.N.Y. 2014) ("conclusory assertions" that "employer's business involved facilitating rape" were insufficient

to state a claim).[5]  For this reason alone, Plaintiff's participation claim against Mr. Weinstein

must be dismissed.

### B. Plaintiff Does Not Adequately Allege that Mr. Weinstein Benefitted From Participation in Any Sex Trafficking Venture.

Plaintiff's participation claim against Mr. Weinstein also is deficient because the

Complaint fails to plausibly allege that he benefitted financially or in any other way, let alone

knowingly benefitted, from Harvey Weinstein's alleged commercial sex trafficking venture, as is

required by the TVPA.

The Complaint does not even attempt to allege that Mr. Weinstein benefitted from

his alleged participation in Harvey Weinstein's commercial sex trafficking venture.  Instead,

Plaintiff merely alleges that Mr. Weinstein "benefitted financially from Harvey Weinstein's

*promotion of films and other business-related activities* in foreign commerce" on foreign trips

like the one during which he allegedly assaulted Plaintiff.  (¶ 9 (emphasis added).)  The

Complaint contains no allegations regarding any purported benefit Mr. Weinstein received from

the alleged sex trafficking venture or from Harvey Weinstein's alleged sexual assaults.

Thus, at most, Plaintiff has alleged that Mr. Weinstein benefitted financially from

his participation in TWC—not from any alleged commercial sex trafficking venture.  This is

plainly insufficient under the plain language of the TVPA.  *See* § 1591(a)(2); *see also Lawson v.*

*Rubin*, 17-cv-6404 (BMC), 2018 WL 2012869, at *11 (E.D.N.Y. Apr. 29, 2018) (dismissing

---

[5] Equally deficient is Plaintiff's conclusory allegation that Mr. Weinstein "conceal[ed] and cover[ed] up" Harvey Weinstein's "defrauded, forced and/or coerced sex acts with aspiring actresses."  (¶ 72.)  This assertion (which does not even appear in the factual allegations section of the Complaint) is likewise unsupported by a single allegation of fact.  Moreover, while the Complaint references certain paragraphs of the NYAG complaint in support of this allegation, only three of the cited paragraphs mention Mr. Weinstein at all, and those paragraphs in no way accuse Mr. Weinstein of "covering up" any purported commercial sex trafficking scheme.  Rather, the gravamen of those paragraphs is that Mr. Weinstein did not take sufficient measures to ensure that TWC was a safe workplace free from sexual harassment and other misconduct.  (NYAG Compl. ¶¶ 97-99)

RICO claims after finding that plaintiff had failed to plead an underlying commercial sex trafficking predicate under the TVPA because, *inter alia*, plaintiffs did not "allege any facts to show that [defendant] 'knowingly benefit[ted] … from participation in a [trafficking] venture'"); *Cabusao v. Lombardi*, No. 1:14CV74-HSO-RHW, 2015 U.S. Dist. LEXIS 185609, at *10 (S.D. Miss. Jan. 30, 2015) ("The Amended Complaint only contains conclusory allegations that 'Defendants knowingly benefitted financially.'  This mere recitation of the elements of the cause of action under the statute is insufficient to state a claim.") (alterations in original).

### C. Plaintiff Does Not Adequately Allege that Mr. Weinstein Had Knowledge of Any Sex Trafficking Venture.

Finally, Plaintiff's participation claim against Mr. Weinstein also fails because the Complaint does not adequately allege that Mr. Weinstein had personal knowledge of—or at least recklessly disregarded—the existence of any alleged commercial sex trafficking venture, or, more particularly, that Harvey Weinstein or anyone else used means of force, fraud or coercion to cause Plaintiff or other women to engage in commercial sex acts.  Here, once again, the Complaint—other than through unsupported legal conclusions couched as factual allegations— contains not a single allegation even suggesting that Mr. Weinstein was aware of or recklessly disregarded Harvey Weinstein's alleged sex trafficking venture.

In *Afyare*, the Sixth Circuit explained that a "defendant's mere membership in the venture is insufficient if he is ignorant of the venture's sex trafficking activities (and the means and methods thereof)."  632 F. App'x at 285 ("guilt by association" cannot support a claim under the TVPA); *see also United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution."); *Lawson*, 2018 WL 2012869, at *11 (commercial sex trafficking claim not adequately pleaded where complaint did not allege

facts to show that defendant "knew or acted in reckless disregard of the fact that 'force, threats of force, fraud, or coercion' would be used to cause plaintiffs to engage in a commercial sex act").

Here, the Complaint alleges in the most conclusory fashion that Mr. Weinstein (i) "had actual knowledge" of Harvey Weinstein's "repeated acts of sexual misconduct" (¶ 8), (ii) "knew or had reason to know that Harvey Weinstein was likely to engage in sexual misconduct with women he came into contact with during the course and scope of his employment" (¶ 10), and (iii) "knew or recklessly disregarded the fact that" Harvey Weinstein "used means of force, fraud, or coercion to cause young female actresses to whom he had promised film role or entertainment projects to engage in sex acts" (¶ 11).  Such "generalized allegations of knowledge are too conclusory" to survive a motion to dismiss.  *McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *19 (S.D.N.Y. Mar. 31, 2016).

Further, even if the Complaint had adequately pled that Mr. Weinstein was aware of Harvey Weinstein's alleged harassment of women or "sexual encounters" or "sex games" with actresses or employees (*see, e.g.*, ¶¶ 23, 24, 25, 47), that would be a far cry from an allegation that Mr. Weinstein knew that Harvey Weinstein forced, defrauded, or coerced women with threats of serious harm or physical restraint into engaging in commercial sex acts—which is what the TVPA requires.  *See* §§ 1591(a), 1591(e)(2)(A).  There is absolutely no non-conclusory allegation in the Complaint that Mr. Weinstein had any such knowledge.

In dismissing a similarly defective claim for a violation of § 1591, the court in *Lawson v. Rubin*, *supra*, recently held:

> [P]laintiffs have not alleged any *facts* to show that Shon knew or acted in reckless disregard of the fact that Rubin would use force, fraud, or coercion to cause plaintiffs to engage in commercial sex acts with him.  The six sub-paragraphs they cite for that proposition simply repeat this element of the offense, without any further factual elaboration or support.  The amended complaint,

like the original complaint, does not allege that Shon was present
for any of the alleged assaults, was told about them before or after
they occurred, or knew that any of the plaintiffs were afraid of
Rubin; nor does it allege anything similar, which might show
knowledge or reckless disregard.  The human-trafficking claim
against Shon is therefore dismissed.

2018 WL 2012869, at *12 (emphasis in original).  The same conclusion is compelled here.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. WEINSTEIN FOR AIDING AND ABETTING COMMERCIAL SEX TRAFFICKING.

Based on the many pleading deficiencies described above with respect to why

Plaintiff's participation claim must be dismissed, her aiding and abetting claim in Count V fares

no better.  But the aiding and abetting claim also must be dismissed for a more fundamental

reason—such claims are not permitted under the TVPA.

### A.   The TVPA Does Not Recognize Claims for Aiding and Abetting Primary Violations.

Plaintiff's claim against Mr. Weinstein for aiding and abetting Harvey

Weinstein's alleged violation of § 1591 fails as a matter of law because the TVPA does not

authorize claims for aiding and abetting.  It is well-settled that civil aiding and abetting claims

only may be brought under a federal statute when that statute expressly provides for such claims.

*See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182

(1994) ("[W]hen Congress enacts a statute under which a person may sue and recover damages

from a private defendant for the defendant's violation of some statutory norm, there is no general

presumption that the plaintiff may also sue aiders and abettors."); *see also Mastafa v. Chevron

Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010) (rejecting the plaintiffs' argument that the

court should presume the existence of aiding and abetting liability in a statute that did not

expressly provide for such liability because "the Supreme Court has adopted a default rule that is

exactly opposite to the plaintiffs' suggestion"), *aff'd*, 770 F.3d 170 (2d Cir. 2014).

13

Indeed, a District Court within this Circuit has applied *Central Bank* in holding

that the TVPA does not provide for civil aiding and abetting liability.  *See Jean-Charles v.*

*Perlitz*, 937 F. Supp. 2d 276, 287 (D. Conn. 2013) ("Plaintiffs claim that Father Carrier and Ms.

Carter can be held liable under § 1595 because they aided and abetted Perlitz in violating § 1591.

Plaintiffs urge that § 1595 incorporates secondary liability under 18 U.S.C. §§ 2 and 3.

However, the text of the statute does not support such a reading and thus the argument fails

under *Central Bank*.").  Accordingly, regardless of the allegations set forth in the Complaint,

Plaintiff's claim against Mr. Weinstein for aiding and abetting Harvey Weinstein's alleged

violation of the TVPA must be dismissed as a matter of law.

**B.    Plaintiff Does Not Adequately Allege that Mr. Weinstein Aided and Abetted Harvey Weinstein's Alleged Commercial Sex Acts.**

Even if the TVPA did recognize aiding and abetting claims (which, as set forth

above, it does not), the Complaint does not come close to adequately alleging conduct by Mr.

Weinstein that could possibly constitute aiding and abetting Harvey Weinstein's alleged

commercial sex acts with Plaintiff.  Where federal statutes do recognize civil aiding and abetting

claims, a plaintiff is typically required to adequately plead (i) the existence of a primary

violation; (ii) knowledge of that violation; and (iii) "substantial assistance … in the

achievement" of the primary violation.  *E.g., Bloor v. Carro*, *Spanbock, Londin, Rodman &*

*Fass*, 754 F.2d 57, 62 (2d Cir. 1985) (setting forth elements of civil aiding and abetting securities

fraud claims prior to *Central Bank*).  The Complaint adequately alleges none of these three

elements.

As set forth above, the Complaint does not contain a single factual allegation

purporting to describe *any* actions Mr. Weinstein took, let alone actions that provided

"substantial assistance … in the achievement" of Harvey Weinstein's alleged misconduct with

14

Plaintiff.  Nor does the Complaint allege a single fact suggesting that Mr. Weinstein had knowledge of Harvey Weinstein's misconduct with Plaintiff or, indeed, any knowledge of Plaintiff at all or of any alleged commercial sex trafficking venture.  Accordingly, even if the TVPA did provide for claims for civil aiding and abetting (and it plainly does not), the Complaint's threadbare secondary liability allegations could not survive this Motion.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012) (affirming dismissal of aiding and abetting claim where complaint, "shorn of its conclusory allegations," made no allegations sufficient to fend off dismissal).

## III.   THE SEX TRAFFICKING STATUTE DOES NOT APPLY IN THE CIRCUMSTANCES ALLEGED IN THE COMPLAINT.

In addition to the complete absence of individualized allegations tying Mr. Weinstein to Harvey Weinstein's alleged assault on Plaintiff or to any alleged sex trafficking venture, the claims against Mr. Weinstein are fatally defective in failing to sufficiently allege conduct that implicates the TVPA at all.

The TVPA was enacted as a result of Congress' recognition "that human trafficking, particularly of women and children in the sex industry, 'is a modern form of slavery, and it is the largest manifestation of slavery today.'"  *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) (quoting 22 U.S.C. § 7101(b)(1)).  Accordingly, Congress explained in the Findings it made in connection with the statute's promulgation that the TVPA was intended specifically to target organized sex trafficking ventures that engage in the sexual exploitation of persons for commercial gain.  *See* 22 U.S.C. 7101(b)(2) (finding that the rapidly expanding sex industry on which Congress was focused in promulgating the TVPA involved the "sexual exploitation of persons, predominantly women and girls, involving activities related to prostitution, pornography, sex tourism and other commercial sexual services").

15

The statute was not intended to transform sexual assaults in violation of state law (or, as in this case, foreign law) into federal offenses.  That is apparent not just from the TVPA's purpose, but from the statutory requirement of a "venture," § 1591(a)(2), as well as its requirement of a "*commercial* sex act," § 1591(a) (emphasis added), which is defined as "any sex act, on account of which anything of value is given to or received by any person," § 1591(e)(3).  These requirements further demonstrate that Congress intended the TVPA to combat unlawful commercial activities in which perpetrators profit financially from the illicit sex trade, as opposed to isolated incidents of gender-based sexual assault in which no money changes hands.  *See United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006) (relying on the TVPA's definition of "commercial sex act" when interpreting an analogous statute proscribing the exploitation of children, and concluding that "in the most sterile terms, the statute covers the situation where a U.S. citizen engages in a commercial transaction through which money is exchanged for sex acts.").

Accepting all of the Complaint's allegations as true, Plaintiff (at most) has alleged an incident of gender-based sexual assault.  But the unwanted encounter between Plaintiff and Harvey Weinstein alleged in the Complaint—as unsettling as it may be—is simply not the type of unlawful economic activity the statute aims to punish.  *See Todd v. United States*, No. C11-0470-JLR-MAT CR07-395-JLR, 2012 WL 2952084, at *6 (W.D. Wash. June 26, 2012) (the TVPA is distinguishable from laws governing gender-motivated crimes, as it relates to commercial sex acts that are economic in nature); *see also United States v. Morrison*, 529 U.S. 598, 613 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity.").

16

No court has applied the TVPA to the type of conduct alleged in the Complaint, and this Court should not do so here.  The Complaint fails to allege at least two of the essential elements of an underlying violation of the TVPA.  First, it does not allege the existence of a commercial sex trafficking "venture," as required by the statute.  And second, it does not allege the occurrence of a "commercial" sex act.

### A.    The Complaint Does Not Plead the Existence of a Sex Trafficking Venture.

As an initial matter, the Complaint fails to plausibly allege even the existence of a "venture" engaged in commercial sex trafficking.  The TVPA defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity."  § 1591(e)(5).  In the context of § 1591(a)(2), the alleged venture must specifically be a sex trafficking venture.  *See* 18 U.S.C. § 1591(a)(2); *see also Afyare*, 632 F. App'x at 280-86 (analyzing statutory language and affirming lower court's holding that the term "venture" under § 1591(a)(2) means a "sex trafficking venture").

While there are few cases analyzing the term "venture" as used in the TVPA, cases in the analogous RICO context—which require the existence of an "enterprise"—are instructive.[6]  To plead the existence of a RICO enterprise, a plaintiff must allege facts showing that the associated individuals "'share[d] a common purpose'" to engage in illegal activity and "'work[ed] together to achieve such purposes.'"  *Foster v. 2001 Real Estate*, No. 14 Civ. 9434 (RWS), 2015 WL 7587360, at *3 (S.D.N.Y. Nov. 24, 2015) (dismissing RICO claim for failure to adequately allege the existence of an enterprise) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)).  Accordingly, without allegations that defendants came together as a continuing unit with the intent to work toward a common purpose

---

[6] The federal RICO statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

of engaging in prohibited conduct, a RICO enterprise cannot be established.  *See Nat'l Grp. for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 271 (S.D.N.Y. 2006) (dismissing RICO claim because complaint "fail[ed] to set forth facts to support the conclusion that all … defendants were actually working with one another or associated together in a single ongoing operation or continuing unit where members worked together to accomplish a common purposes"); *Feinberg v. Katz*, No. 99 Civ. 45(CSH), 2002 WL 1751135, at *16 (S.D.N.Y. July 26, 2002) (dismissing RICO claim where complaint contained only "generalized allegations" unsupported by facts showing how defendants acted together as a continuing unit).

Here, the Complaint makes not a single allegation that any two or more people "associated" for the common purpose of operating a commercial sex trafficking venture. Plaintiff does not even allege that any of the Defendants other than Harvey Weinstein were members of  the supposed "venture."  Indeed, only Harvey Weinstein is even alleged to have engaged in force, fraud or coercion to cause women to engage in purportedly "commercial" sex acts, which he allegedly did, in Plaintiff's case, in the privacy of his hotel room.  No other person (and certainly not Mr. Weinstein) is alleged to have shared with Harvey Weinstein a common purpose of subjecting Plaintiff or any other women to sexual assault or of profiting from his sexual activities.  For this reason, too, the Complaint must be dismissed.

**B.      The Complaint Does Not Plead the Occurrence of "Commercial" Sex Acts.**

As noted above, the TVPA defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by a person."  §1591(e)(3).  Courts have interpreted that definition to require that the sex act at issue be economic in nature, *i.e.*, motivated by financial gain.  But the Complaint does not allege that Plaintiff was sexually exploited for profit.  Accordingly, Plaintiff has failed to allege the existence of a *commercial* sex trafficking venture that Mr. Weinstein could have participated in or aided and abetted.

18

As the courts have recognized, the conduct proscribed by the TVPA must be distinguished from ordinary gender-motivated crimes of violence because the TVPA is intended to regulate commercial sex acts that are economic in nature.  *See United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) (in criminal appeal, observing that, in enacting the TVPA, Congress was focused on "the traffic in the sexual services of women based on importing women from around the world by force or fraud"); *United States v. Campbell*, 111 F. Supp. 3d 340, 344-45 (W.D.N.Y. 2015) (TVPA was intended to regulate an "economic 'class of activities'") (citation omitted).  Thus, in determining whether a complaint adequately pleads a commercial sex act, the focus is on whether the victim was "sexually exploited *for profit*."  *United States v. Marcus*, 487 F. Supp. 2d 289, 307 (E.D.N.Y. 2007), *rev'd on other grounds*, 538 F.3d 97 (2d Cir. 2008) (emphasis added); *see also Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) (granting defendant's motion for summary judgment because Plaintiffs offered no evidence "to show that Defendants were compensated 'on account of' the sex acts…") (internal citation omitted).

Here, Plaintiff does not allege that anyone—and certainly not Mr. Weinstein— profited or derived any financial gain from her alleged exploitation by Harvey Weinstein.  Instead, she alleges the opposite—that she went to Harvey Weinstein's hotel room in Cannes, France in hopes of advancing *her* career, and then was sexually assaulted by him.  (¶¶ 27-39.)  In short, she makes no allegation that *any* alleged member of the purported commercial sex trafficking venture profited in any way from her purported encounter with Harvey Weinstein.  As described in the Complaint (¶¶ 32-38), the motivation for that encounter was not economic in nature, but was for Harvey Weinstein's personal sexual gratification.  Accordingly, Plaintiff has failed to state a plausible claim under the TVPA.  To hold otherwise would distort beyond

19

recognition Congress' intent in enacting the legislation to "prevent slavery, involuntary servitude, and human trafficking *for commercial gain*." *United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015) (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims asserted against Defendant Robert Weinstein in Counts III and V of the Complaint in their entirety and with prejudice.

Dated: New York, New York
      May 15, 2018                     SCHULTE ROTH & ZABEL LLP

                                   By:   /s/ Gary Stein
                                        Barry A. Bohrer
                                        Gary Stein
                                        Brian T. Kohn
                                        Carly J. Halpin

                                        919 Third Avenue
                                        New York, NY  10022
                                        Telephone: 212.756.2000
                                        Facsimile: 212.593.5955
                                        E-mail: barry.bohrer@srz.com
                                              gary.stein@srz.com
                                            brian.kohn@srz.com
                                            carly.halpin@srz.com

                                        *Attorneys for Defendant Robert Weinstein*

20