UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    X

                                                        Docket No.: 1:17-cv-09260 (RWS)


KADIAN NOBLE,                                    **PLAINTIFF'S MEMORANDUM
                                                 OF LAW IN OPPOSITION TO
                                Plaintiff,       DEFENDANT ROBERT
                                                 WEINSTEIN'S MOTION TO
         - vs -                                  DISMISS**

HARVEY WEINSTEIN, THE WEINSTEIN
COMPANY, BOB WEINSTEIN, and WEINSTEIN
COMPANY HOLDINGS, LLC,

                                Defendants.
_____X


         Plaintiff Kadian Noble, by and through undersigned counsel, files this Memorandum of

Law in Opposition to Defendant Robert Weinstein's Motion to Dismiss (doc. no. 76), in

accordance with Local Civil R. 7.1 and this Court's Individual Practices.


                                    **Introduction**


         Plaintiff Kadian Noble ("Kadian") brings her Amended Complaint for violation of 18

U.S.C. § 1591(a), for which a civil remedy is provided under 18 U.S.C. § 1595(a).  Defendant

Robert ("Bob") Weinstein moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), contending that

the Amended Complaint fails to allege a plausible claim against him individually and fails to

state a claim under the statute.   The Amended Complaint sets forth plausible allegations

demonstrating that Bob Weinstein knowingly or with reckless disregard for the facts participated

in, and aided and abetted, the venture of Harvey Weinstein, his brother and business partner, in

using means of force, fraud or coercion to obtain commercial sex acts from aspiring actresses.

Bob Weinstein knew of a pattern of misconduct by his brother Harvey in which he used the

infrastructure and employees of their business to obtain sex acts from women, through promises of acting roles.  The allegations of the Amended Complaint show that Bob Weinstein benefitted financially from Harvey Weinstein's activities, particularly in foreign travel, while knowing that part and parcel of these activities involved Harvey Weinstein using force, fraud or coercion on aspiring actresses to engage them in sex acts.  Among other things, the Amended Complaint alleges that Bob Weinstein had knowledge of Harvey Weinstein's longstanding pattern of misconduct in violation of 18 U.S.C. § 1591(a) and claims arising this misconduct, making settlements of claims with victims whom he had enter into strict nondisclosure agreements (NDAs), intended to prevent the discovery of the scheme.  Accordingly, Bob Weinstein not only knew about Harvey Weinstein's pattern of sexual misconduct with aspiring actresses, he acted to facilitate or further the scheme.  The Amended Complaint therefore alleges a plausible claim against Bob Weinstein, and the Motion to Dismiss should be denied in its entirety.

## Allegations of the Amended Complaint

The allegations regarding Harvey Weinstein's venture in violation of 18 U.S.C. § 1591(a) are discussed at length in Plaintiff's Memorandum of Law in Opposition to Harvey Weinstein's Motion to Dismiss (doc. no. 69).   The instant Memorandum therefore focusses on the allegations concerning Defendant Bob Weinstein.  As set forth in the Amended Complaint, Bob Weinstein founded The Weinstein Company (TWC) with his brother Harvey. (Amended Complaint ("AC") ¶ 4).  Bob Weinstein was the Chairman of TWC and, upon information and belief, owns 42 % of the equity in TWC.  (*Id*.)        The Amended Complaint alleges that, in his capacity as a top executive of TWC, Bob Weinstein knew that Harvey was using his powerful position in the entertainment industry through TWC to entice or recruit women with promises of parts or roles in TWC projects, and then using means of force, fraud or coercion to engage them in sex acts:

8.      Prior to the incident involving KADIAN, TWC's
executives, officers and employees, including Defendant BOB
WEINSTEIN, had actual knowledge of HARVEY WEINSTEIN's
repeated acts of sexual misconduct with women doing business
with, or seeking to do business with TWC.  In particular, they were
aware of HARVEY WEINSTEIN's pattern of using his power and
influence to defraud, coerce or force young aspiring actresses to
engage in sexual acts with him.

9.      TWC and BOB WEINSTEIN were aware that HARVEY
WEINSTEIN engaged in such conduct while he was abroad
promoting TWC projects, and facilitated these trips for him. BOB
WEINSTEIN and TWC benefitted financially from HARVEY
WEINSTEIN's promotion of films and other business-related
activities in foreign commerce on these trips, which supported
HARVEY   WEINSTEIN's   course   of   conduct.      HARVEY
WEINSTEIN's coerced, forced and/or defrauded sex acts with
aspiring actresses seeking TWC's assistance to advance their
careers was part and parcel of HARVEY WEINSTEIN's business
dealings in foreign commerce.

10.      Prior to HARVEY WEINSTEIN's sexual misconduct with
KADIAN, Defendants TWC and BOB WEINSTEIN knew or had
reason to know that HARVEY WEINSTEIN was likely to engage
in sexual misconduct with women he came into contact with
during the course and scope of his employment.  In particular,
upon information and belief, Defendants TWC and BOB
WEINSTEIN knew or recklessly disregarded the facts that
HARVEY WEINSTEIN would lure young aspiring actresses into
compromising situations under the guise of business meetings.

11.      HARVEY WEINSTEIN, TWC and BOB WEINSTEIN
knew, or recklessly disregarded the fact that, HARVEY
WEINSTEIN used means of force, fraud or coercion to cause
young female actresses to whom he had promised film roles or
entertainment projects to engage in sex acts.

(AC ¶¶ 8 -11).

The Amended Complaint further makes plausible allegations that Bob Weinstein knew of

multiple claims arising from Harvey's promises, acts and conduct with aspiring actresses, and

thus was well aware of his pattern in using their business to obtain sex acts.  (AC ¶¶ 74 – 75).

Yet Bob Weinstein continued to fund, support and facilitate Harvey's travels in foreign

commerce, particularly to the preeminent Cannes Film Festival, knowing that he would benefit

financially from Harvey's activities.  (AC ¶¶ 76 – 77).  The Amended Complaint alleges facts

demonstrating Bob Weinstein's participation in Harvey's sex act venture:

> 72.     BOB WEINSTEIN, along with HARVEY WEINSTEIN,
> effectively controlled the Board of Directors of TWC.  They used
> this control to conceal and cover up from exposure, among other
> things, HARVEY WEINSTEIN's defrauded, forced and/or coerced
> sex acts with aspiring actresses, while maintaining HARVEY
> WEINSTEIN's position with TWC, which furthered the financial
> interests of BOB WEINSTEIN.  (Exh. "A", pp. 26-29, ¶¶ 95-101).
>
> 73.     Upon information and belief, by facilitating HARVEY
> WEINSTEIN's commercial sex acts in foreign commerce, BOB
> WEINSTEIN enjoyed the promotion and promulgation of TWC
> projects internationally.  HARVEY WEINSTEIN was the face of
> TWC and his presence and promotion in foreign commerce
> brought exposure and prestige to TWC films.  BOB WEINSTEIN
> facilitated commercial sex acts in foreign commerce by HARVEY
> WEINSTEIN to obtain the enormous publicity HARVEY
> WEINSTEIN garnered by promoting TWC films internationally,
> which financially benefitted both TWC and BOB WEINSTEIN
> given his substantial interest in TWC.

 (AC ¶¶ 72 – 73).

The plausibility of the allegations against Bob Weinstein are supported by the OAG's

Complaint, which is attached to the Amended Complaint as Exhibit "A".  It has detailed

allegations of fact concerning Bob Weinstein.[1]  Paragraph 6 of the OAG's Complaint states that

---

[1] There is substantial overlap in the relevance of the facts plead against Bob Weinstein by the
New York Attorney General's Office and those  for a secondary liability claim under §§1591(a)
and 1595.    The Amended Complaint quotes substantial portions of the OAG's Complaint and
expressly incorporates its allegations of fact.    (AC, ¶ 13).   A pleading filed in another
proceeding may be appended to and incorporated in a complaint where, as here, it does "not pose
any new allegations or legal theories separate from the content of the numbered paragraphs" of
the complaint.  *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 234 (E.D.N.Y.
2010).

Bob Weinstein was "repeatedly presented with credible evidence" of Harvey Weinstein's "use of corporate employees and resources to facilitate sexual activity with third parties [i.e., aspiring actresses], amidst allegations that HW had engaged in unlawful sexual conduct." (AC Exh. "A", p. 3). Bob Weinstein used the device of nondisclosure agreements in settlements with victims to facilitate Harvey Weinstein's commercial sex act venture:

> Instead of investigating and taking prompt corrective action, TWC and RW used settlements that contained strict NDAs to keep law enforcement, the public, and even other TWC employees from discovering the extensive allegations of misconduct against HW…Many witnesses to HW's unlawful conduct separately were subject to broad NDAs pursuant to their TWC employment agreements, preventing them from revealing their own observations of misconduct to law enforcement as well.

(AC, Exh. "A", ¶8, p.4).

Bob Weinstein was an active participant in the efforts to silence victims and cover up Harvey Weinstein's sexual misconduct with aspiring actresses through the nondisclosure agreements, as he paid for the settlements resulting in these agreements:

> Upon information and belief, RW also has admitted to the press that he paid for prior settlements of claims made by women against HW, after those claims were made known to him as a member of management of RW's and HW's prior company, Miramax.

(Id., ¶ 98, p. 27).

## Argument

### I.   THE AMENDED COMPLAINT SATISFIES THE PLAUSIBILITY REQUIREMENT

In considering the legal sufficiency of a complaint under Fed.R.Civ.P. 12(b)(6), the Court must take its factual allegations to be true and draw all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court applies a plausibility standard

to determine whether the plaintiff states a claim for which relief may be granted. *Louisiana Stadium & Expo. Dist. v. Financial Guaranty Ins. Co*., 701 F.3d 39, 42 (2d Cir. 2011). "[C]ourts must remember that 'the plausibility standard is not akin to a 'probability requirement.'" *Vega v. Hempstead Union Free School Dist*., 801 F. 3d 72, 87 (2d Cir. 2015). The complaint satisfies the plausibility standard if it alleges "facts that would be sufficient to permit a reasonable inference that the defendant has engaged in culpable conduct[.]" *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2011). As discussed below, the Amended Complaint alleges sufficient facts to permit reasonable inferences that Bob Weinstein participated in Harvey Weinstein's commercial sex act venture in violation of 18 U.S.C. §§ 1591 and 1595.

## II.  PLAINTIFF PLAUSIBLY STATES A CLAIM FOR RELIEF AGAINST BOB WEINSTEIN FOR PARTICIPATING IN A VENTURE IN VIOLATION OF 18 U.S.C. § 1591

Section 1591(a) applies to "[w]hoever knowingly -- … (2) benefits, financially or by receiving anything of value from participation in a venture which has engaged in an act described in violation of paragraph (1),[2] knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion … or any combination of such means will be used to cause the person to engage in a commercial sex act, … ." In an unpublished decision of a panel of the Sixth Circuit Court of Appeals, United *States v. Afyare*, 632 Fed. Appx. 272 (6th Circuit 2016), three elements were identified for the secondary liability of a defendant:

---

[2] Paragraph (a)(1) applies to the person with primary liability under the statute, who, in or affecting interstate or foreign commerce, "knowingly … recruits, entices, [etc.] by any means a person; … ."

The defendant must

(1)   knowingly benefit (financially or by receiving anything of value);

(2)   from participation in a venture which has engaged in trafficking of a person (i.e., an act of recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means a person);

(3)   while knowing or in reckless disregard of the fact that participants in the venture would use force, threats, fraud, coercion, or any combination to cause that person to engage in a commercial sex act....

*Id.* at 283.[3]        Each of these elements is sufficiently alleged in the Plaintiff's Amended Complaint for purposes of the plausibility requirement.

### A.   *The Amended Complaint Alleges that Bob Weinstein Knowingly Benefitted from Harvey Weinstein's Commercial Sex Act Venture*

The Amended Complaint alleges a scheme perpetrated by Harvey Weinstein, using the employees, executives and resources of TWC, to recruit and entice aspiring actresses with promises of acting roles and the benefit of his influence in the entertainment business, which he would use to obtain sex acts through means of force, fraud or coercion.    (AC, ¶¶ 15 - 47).  The use of this scheme was inextricably entwined with the conduct of the brothers' business, which Bob Weinstein benefitted from substantially.   In arguing for dismissal, Bob Weinstein improperly seeks a factual inference   in his favor by  separating and distinguishing the business of TWC which benefitted him  from Harvey Weinstein's sex scheme in violation of 18 U.S.C. § 1591(a). (See Defendant's Memorandum, doc. no. 76, p. 10 ("at most, Plaintiff has alleged that Mr. Weinstein benefitted financially from his participation in TWC – not from any alleged

---

[3] Secondary liability for a civil claim is similarly worded in 18 U.S.C. § 1595(a), using the language of actual or constructive notice; it is applicable to "whoever knowingly benefits, financially (or by receiving anything of value from participation in a venture which that person *knew or should have known* has engaged in an act in violation of this chapter) … ."    (Emphasis added).

commercial sex trafficking venture")).    The Amended Complaint, however, plausibly alleges the significant tie between the commercial sex act scheme and the financial benefit to Bob Weinstein.  (*See, e.g.*, AC ¶¶ 9, 73).    Harvey Weinstein travelled to industry events in London and to Cannes, France, for example, as an integral component of the promotion of TWC films and advancement of TWC projects.  (*Id.*, ¶ 73).    Bob Weinstein obtained these benefits from Harvey Weinstein's foreign travel knowing that women would be sexually victimized in Harvey's scheme.

The requirement that the defendant knowingly benefit from the activities of the person who is primarily liable under 18 U.S.C. § 1591 has not been construed to impose a high threshold by the courts.  In *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276 (D. Conn. 2013), a civil claim was brought pursuant to 18 U.S.C. §§ 1591 and 1595 arising from the sexual abuse of children by Douglas Perlitz, the founder of Project Pierre Toussaint ("PPT"), a school for poor children in Haiti.  The Plaintiffs brought claims against, among others, Fairfield University, which co-founded the school with Perlitz, and Father Paul Carrier, whom Fairfield designated as its agent to oversee the operations of the school.  *Id.* at 279-80.  The Court denied these defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6),   noting the plaintiffs' allegation that they "knowingly benefitted financially from PPT."  *Id.* at 288.  Likewise, the Amended Complaint alleges that Bob Weinstein knowingly benefitted financially from TWC, through Harvey's activities.  Indeed, the Amended Complaint alleges a particularly close connection between the brothers' business activities and Harvey's sex scheme in violation of 18 U.S.C. § 1591, as compared to the apparent connection between the financial benefits received from the PPT school by the defendants in *Perlitz* and the acts of child sexual abuse alleged in that case. *See also United States v. Jennings*, 280 Fed. Appx. 836, 844 (11th Cir. 2008) (finding the

financial benefit sufficient where expenses such as gas for car travel and a motel room were paid for by a co-defendant).

### B.  The Amended Complaint Alleges that Bob Weinstein Participated in a Venture in Violation of 18 U.S.C. § 1591(a)

The term "venture" is defined in 18 U.S.C. § 1591(e)(5) as "any group of two or more individuals associated in fact, whether or not a legal entity."   In *Afyare*, the Court examined dictionary definitions of "venture," noting that each "requires an undertaking of some kind directed to some defined end." *Id*. at 279.    In the context of § 1591(a), the "venture" is one which has engaged in an act of knowingly recruiting, enticing, etc. the person who will engage in a commercial sex act.[4]  *Id*. at 285 (noting that the "placement and purpose" of the term "venture" in § 1591(a)(2) "modify its 'bare meaning' in § 1591(e)(5)") (citation omitted).  Accordingly, the Court in *Afyare* rejected the government's argument in construction of the statute that the term "venture" may refer to any people associating for any reason. *Id*. at 286.  The *Afyare* Court used the example of a hypothetical defendant who joined a soccer team with some sex traffickers, knowing that the source of the funds the sex traffickers used to sponsor the team were from sex trafficking activities.  *Id*. Without more, this hypothetical defendant would not have secondary liability under the statute.    Rather, in "participating in a venture," the defendant cannot be

---

[4] Although the term "venture" is defined in the statute and its meaning indicated by its use in § 1591(a)(2), Defendant Bob Weinstein seeks a limited construction and scope of this term by comparing it to the use of the term "enterprise" in the RICO statute.  (Bob Weinstein's Memorandum, pp. 17 – 18).   A RICO enterprise is defined in a manner that reflects the unique statutory scheme determining a RICO violation, as it requires associated persons who "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115 (2d Cir. 2012) (citation omitted).  The level of involvement necessary for a statutory violation  indicated in this language goes well beyond activity that furthers "some aspect" of the venture in violation of 18 U.S.C. § 1591(a), and simply cannot be read into the statute.  See *Afyare*, 632 Fed. Appx. at 286.

entirely passive, but must be shown to have engaged in an activity that furthered "some aspect" of the violation of § 1591(a). *Id.*

The Amended Complaint sufficiently alleges activities by Bob Weinstein that furthered aspects of the scheme used by Harvey in violation of 18 U.S.C. § 1591(a), satisfying the plausibility requirement. This includes the use of strict NDA's to prevent discovery of Harvey Weinstein's continuing scheme and course of conduct that was in violation of § 1591(a). It also includes the settlements that contained these NDA's, which Bob Weinstein paid for after receiving complaints against Harvey for sexual misconduct. (*See* discussion *supra* pp. 3 - 5). Harvey's use of TWC resources and staff were essential to the scheme, particularly in his foreign travel, and Bob Weinstein is alleged to have facilitated Harvey in his use of these resources. (AC ¶ 9). Bob Weinstein thus engaged in affirmative acts, as alleged in the Amended Complaint, that furthered some aspects of Harvey Weinstein's violation of 18 U.S.C. § 1591(a). Accordingly, the allegations of the Amended Complaint are sufficient to plausibly demonstrate that Bob Weinstein "participated in the venture" in violation of the statute.

### C.  The Amended Complaint Alleges that Bob Weinstein Had Actual or Constructive Knowledge of Harvey Weinstein's Sex Scheme In Violation of 18 U.S.C. § 1591(a)

Bob Weinstein argues that the allegations of the Amended Complaint regarding his knowledge are conclusory, which is not supported by a review of the pleading. The Amended Complaint alleges a particular plan and scheme of Harvey Weinstein, using the resources and staff of TWC, that was known among the executives of TWC. (AC ¶¶ 23 - 25). Bob Weinstein worked with his brother Harvey over a period of many years, first at Miramax and then at TWC. During that time, the Amended Complaint alleges that Bob Weinstein was involved in resolving multiple complaints raised by women victimized in Harvey Weinstein's sex scheme, including

10

employees of their business and third parties, *i.e.*, aspiring actresses.  (*See* discussion *supra* pp. 2 - 5).  It may thus be reasonably inferred that Bob Weinstein knew of Harvey's scheme in violation of 18 U.S.C. § 1591(a), or at least recklessly disregarded the pertinent facts.  The question raised by the Motion is whether the claim that Bob Weinstein had actual or constructive notice is plausible given the facts and circumstances plead in the Amended Complaint.    That question, applying the standard applicable to a Rule 12(b)(6) Motion, must be answered in the affirmative.

In *Perlitz*, the Court found that the complaint sufficiently alleged notice based on red flags which should have alerted the defendants to Perlitz's ongoing sexual misconduct with children in the school:

> Defendants also contend that even if PPT was a venture engaged in violating § 1591, the allegations of the complaint do not support a plausible inference that they knew or should have known.  The complaint alleges that Father Carrier knew at least one PPT student was living at Perlitz's home, witnessed Perlitz show at least one student a pornographic video, and stopped communicating with the PPT administrator who confronted  Perlitz about sexual abuse….  Viewed in the context of the allegations of the complaint as a whole, these allegations concerning Father Carrier's  knowledge of Perlitz's wrongful activities raise a plausible inference that he knew or should have known PPT was violating § 1591.

937 F. Supp. 2d at 288.   Here, the Amended Complaint alleges more than red flags: Bob Weinstein was involved in resolving complaints by aspiring actresses of sexual misconduct by Harvey Weinstein.   It is sufficient for purposes of notice under the statute that the defendant be "familiar with a pattern of conduct."  *United States v. Todd*, 627 F. 3d 329 (9th Cir. 2010).   The Amended  Complaint  alleges  such  a    pattern,  and  that  Bob  Weinstein  knew  of  Harvey

Weinstein's pattern of sexual misconduct with aspiring actresses in the course of their business activities, which "raise[s] a plausible inference that he knew or should have known [Harvey] was violating § 1591." *Perlitz,* 937 F. Supp. 2d at 288.

### III.   III.PLAINTIFF STATES A VALID CLAIM FOR RELIEF   AGAINST BOB WEINSTEIN FOR AIDING AND ABETTING A VIOLATION OF 18 U.S.C. § 1591

#### A. A Claim For Aiding and Abetting Under 18 U.S.C. §§ 1591, 1595 Is Not Foreclosed by *Central Bank*

Bob Weinstein asserts that Plaintiff has failed to state a claim for secondary liability (aiding and abetting) under 18 U.S.C. §§ 2 and 3, based on the authority of *Central Bank, N.A.* v. *First Interstate Bank, N.A.,* 511 U.S. 164, 114 S.Ct. 1439 (1994).  The *Central Bank* decision, which held that the implied private right of action for securities fraud under Rule 10b-5 of the Securities and Exchange Commission did not encompass a secondary liability claim for aiding and abetting such  securities fraud, is distinguishable and inapposite to a civil claim under 18 U.S.C. §§ 1591 and 1595.  The holding in *Central Bank* applies to Rule 10b-5, which the Supreme Court has held *implies* a civil right of action.  *Id.* at 166 -67.      The federal criminal statutes provide for secondary liability as follows:  "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2 (see also § 3, imposing criminal liability on accessories after the fact).  In *Central Bank*, the Court declined to extend the reach of the implied right of action under Rule 10(b) to aiding and abetting claims based solely on 18 U.S.C. § 2:

> [W]hile it is true that an aider and abettor of a criminal violation of any provision of the 1934 Act, including § 10(b), violates 18 U.S.C. § 2, it does not follow that a private civil aiding and abetting cause of action must also exist. We have been quite reluctant to infer a private right of action from a criminal

prohibition alone; in *Cort v. Ash,* 422 U.S. 66, 80, 95 S. Ct. 2080 (1975), for example, we refused to infer a private right of action from "a bare criminal statute." And we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions …. And thus, given 18 U.S.C. § 2, we would also have to hold that a civil aiding and abetting cause of action is available for every provision of the Act. There would be no logical stopping point to this line of reasoning: Every criminal statute passed for the benefit of some particular class of persons would carry with it a concomitant civil damages cause of action….

This approach, with its far-reaching consequences, would work a significant shift in settled interpretive principles regarding implied causes of action….We are unwilling to reverse course in this case. We decline to rely only on 18 U.S.C. § 2, as the basis for recognizing a private aiding and abetting right of action under § 10(b).

511 U.S. at 190-91 (citations omitted). Unlike the claim addressed in *Central Bank*, Sections 1591 and 1595 provide an *express* civil right of action, which by its language encompasses secondary liability claims:

(a) An individual who is a victim of a violation of this chapter … may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)… .

18 U.S.C. § 1595(a). The *Central Bank* decision and its reasoning is thus inapposite, as it is plain from the statutory language, that unlike Rule 10b-5, Congress intended secondary liability under the Statute, and expressly provided for such in the parenthetical of § 1595(a).

In *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276 (D. Conn. 2013), however, the district court held that a secondary liability claim may be plead under § 1595 but not under §§ 2 and 3, based on its reading of *Central Bank*. *Id.* at 287. The Court states the conclusion that "the text of the statute [§ 1595] does not support such a reading [which incorporates secondary liability under §§ 2 and 3]," but does not analyze the issue and does not consider the significant

13

difference between the implied private right of action under Rule 10b-5 addressed in *Central Bank* and the express right of action under §§ 1591 and 1595.  Other courts have considered and applied aiding and abetting liability in criminal cases under § 1591.  *United States v. Cook*, Case No. 10-00244-02, 2013 U.S. Dist. LEXIS 85511 *34 (W.D. Mo. May 6, 2013); *United States v. Jennings*, 280 Fed. Appx. 836, 843 (11th Cir. 2008).  Given the statute's civil remedy provision, this Court should hold that Plaintiff may state a claim for aiding and abetting liability against Bob Weinstein.

### B.  Plaintiff Has Plausibly Alleged an Aiding and Abetting Violation Against Bob Weinstein

Bob Weinstein further contends that Plaintiff has not adequately alleged the elements of a claim for aiding and abetting. These elements are as follows:

> In the civil context, aiding and abetting liability requires proof of three elements: (1) "the party whom the defendant aids must perform a wrongful act that causes an injury," (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and (3) "the defendant must knowingly and substantially assist the principal violation."

*Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (quoting *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)).  All of these elements are plausibly alleged in the allegations of the Amended Complaint and the reasonable inferences which may be drawn therefrom.   It may be inferred from the allegations of the Amended Complaint, including Bob Weinstein's role as chairman of the company and his involvement in the handling of complaints against Harvey and the payments to victims in exchange for NDA's, that he was aware of his role in Harvey's illegal activities with women.  Given his knowledge of Harvey Weinstein's pattern of conduct, it may be inferred that Bob Weinstein knowingly and substantially assisted Harvey by means of these

activities.   *See Taggart v. United States*, 63 F.2d 285 (10th Cir. 1933) (upholding conviction for aiding and abetting of defendant who did not himself commit acts of criminal fraud, but had control of business in which criminal offenses were committed and knowledge of the fraud). Accordingly, Plaintiff has adequately stated a plausible claim for aiding and abetting civil liability against Bob Weinstein.

### IV.   THE AMENDED COMPLAINT ALLEGES A PLAUSIBLE VIOLATION OF 18 U.S.C. § 1591(a)

Bob Weinstein argues that Plaintiff fails to state a claim for primary liability under § 1591(a), raising essentially the same issues previously addressed by Plaintiff in her Memorandum of Law in Opposition to Defendant Harvey Weinstein's  Motion to Dismiss (doc. no. 69).  Plaintiff refers to the discussion of the issues in that Memorandum.  Like Harvey Weinstein, Bob Weinstein relies heavily upon statements regarding the purpose and intent of § 1591(a), attempting to minimize the plain meaning of the statutory language.  Also like Harvey Weinstein, Bob Weinstein asserts that "Plaintiff (at most) has alleged an incident of gender-based sexual assault,"[5] ignoring entirely the substantial factual allegations and content in the Amended Complaint, and the OAG Complaint incorporated therein, which demonstrate that Harvey Weinstein's sexual encounter with Plaintiff  was part of a pattern in a   particular and long-standing scheme to obtain sex acts from aspiring actresses using the means of the brothers' business, controlled by Bob Weinstein and TWC.  (AC, ¶¶ 15 – 47).    These allegations satisfy each of the elements of a violation based on the unambiguous language of § 1591(a).

Bob Weinstein further contends that the Amended Complaint fails to allege a commercial sex act, in that Plaintiff does not allege that she "was sexually exploited for profit" or that anyone

---

[5] Bob Weinstein's Memorandum of Law, p. 16.

"profited or derived any financial gain from her alleged exploitation by Harvey Weinstein." (Bob Weinstein's Memorandum of Law, pp. 18 – 19).   This argument ignores the statutory language, which defines "commercial sex act" to mean "any sex act, on account of which anything of value[6] *is given to or received by any person*."     18 U.S.C. § 1591(e)(3) (emphasis added).   By this plain language, a violation of the statute does not depend on who gives or who receives a thing of value.   Accordingly, in arguing that a violation of the statute requires that a defendant have received profit or financial gain from the sexual exploitation of the plaintiff, Bob Weinstein attempts impermissibly to read limiting language into the statute that is not there, and which otherwise is inconsistent with the statutory language.     Here, Plaintiff received from Harvey Weinstein a thing of significant value to her or any aspiring actress:  the promise of a role in a film and entertainment project.  (See AC, ¶¶ 52 – 55).  These allegations accordingly satisfy the statutory language.

### Conclusion

The Amended Complaint alleges the elements of a violation of §§ 1591 and 1595 against Bob Weinstein; in particular, it makes allegations that he participated in, and aided and abetted, a venture in violation of § 1591(a).   Plaintiff thus states a claim for relief and satisfies the plausibility requirement.  It is therefore respectfully requested that Defendant Bob Weinstein's Motion to Dismiss be denied in its entirety.

---

[6] The phrase "anything of value" is also used in the bribery statute, 18 U.S.C. § 666(a)(1)(b), and is construed broadly:  "The plain language of the statute does not require a restricted, technical interpretation that would prevent the consideration of the 'thing's' value to other parties with an immediate interest in the transaction."  *United States v. Hines*, 541 F. 3d 833, 837 (8th Cir. 2008). *Accord United States v. Marmolejo*, 89 F. 3d 1185, 1191 (5th Cir. 1996) (holding that "anything of value" encompasses intangible benefits, including conjugal visits); *United States v. Zimmerman*, 509 F. 3d 920, 927 (8th Cir. 2007) (holding that "anything of value" includes the benefits from a rezoning application).

Dated:  Boca Raton, FL
          June  5, 2018                   Respectfully submitted,

                                      HERMAN LAW
                                      5200 Town Center Circle #540
                                      Boca Raton, FL 33486
                                      Tel: 305-931-2200;
                                      Fax: 305-931-0877

                                  By:  /s/ Stuart S. Mermelstein
                                      Jeffrey M. Herman
                                      Stuart S. Mermelstein

## CERTIFICATE OF SERVICE

       I hereby certify that on June 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing to:

| | |
|---|---|
| Morrison Cohen LLP<br>Mary E. Flynn, Esq.<br>mflynn@morrisoncohen.com<br>Aaron M. Schue, Esq.<br>aschue@morrisoncohen.com<br>Latisha V. Thompson, Esq.<br>lthompson@morrisoncohen.com<br>*Attorneys for Defendant Harvey Weinstein* | Seyfarth Shaw LLP<br>Gerald L. Maatman, Jr., Esq.<br>gmaatman@seyfarth.com<br>Alnisa Bell, Esq.<br>abell@seyfarth.com<br>Lynn A. Kappelman, Esq.<br>lkappelman@seyfarth.com<br>Scott Rabe, Esq.<br>srabe@seyfarth.com<br>Lorie E Almon, Esq.<br>lalmon@seyfarth.com<br>*Attorneys for The Weinstein Company LLC and Robert ("Bob") Weinstein* |

                                        /s/ Stuart S. Mermelstein

17