UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KADIAN NOBLE,<br><br>               Plaintiff,<br><br>               v.<br><br>HARVEY WEINSTEIN, BOB WEINSTEIN, THE WEINSTEIN COMPANY, LLC, and WEINSTEIN COMPANY HOLDINGS, LLC,<br><br>               Defendants. | Case No.: 1:17-cv-09260-RWS<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT ROBERT WEINSTEIN'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

SCHULTE ROTH & ZABEL LLP

Barry A. Bohrer
Gary Stein
Brian T. Kohn
Carly J. Halpin
919 Third Avenue
New York, New York 10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Defendant Robert Weinstein*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..............................................................................................................................1

I.     PLAINTIFF CANNOT CURE HER PLEADING DEFICIENCIES BY RELIANCE ON ALLEGATIONS IN ANOTHER COMPLAINT THAT HAVE NOTHING TO DO WITH SEX TRAFFICKING. ...................................................................................1

II.    PLAINTIFF'S OPPOSITION PROVIDES NO BASIS TO SUSTAIN THE PARTICIPATION CLAIM AGAINST MR. WEINSTEIN. ................................................4

        A.     The Opposition Does Not Identify Any Allegations in the Complaint Suggesting That Mr. Weinstein Participated in a Sex Trafficking Venture. ................................................................................................................4

        B.     The Opposition Does Not Identify Any Allegations in the Complaint Suggesting that Mr. Weinstein Benefitted from Participation in a Sex Trafficking Venture. ................................................................................................6

        C.     The Opposition Does Not Identify Any Allegations in the Complaint Suggesting Mr. Weinstein's Knowledge of a Sex Trafficking Venture. ......7

III.   PLAINTIFF'S OPPOSITION PROVIDES NO BASIS TO SUSTAIN THE AIDING AND ABETTING CLAIM AGAINST MR. WEINSTEIN. ................................................8

IV.   PLAINTIFF'S OPPOSITION FAILS TO EXPLAIN HOW THE TVPA APPLIES TO THE ISOLATED ASSAULT ALLEGED IN THE COMPLAINT. ...........................10

CONCLUSION ........................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Cabusao v. Lombardi*,
   No. 1:14CV74-HSO-RHW,
   2015 U.S. Dist. LEXIS 185609 (S.D. Miss. Jan. 30, 2015) ...................................................... 6

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) ............................................................................................................... 8, 9

*City of New York v. Milhelm Attea & Bros., Inc.*,
   No. 06-CV-3620(CBA), 2009 WL 701005 (E.D.N.Y. Mar. 11, 2009) ................................... 8

*DLJ Mortgage Cap., Inc. v. Kontogiannis*,
   726 F. Supp. 2d 225 (E.D.N.Y. 2010) .................................................................................... 3

*Doe v. Alsaud*,
   12 F. Supp. 3d 674 (S.D.N.Y. 2014) ...................................................................................... 5

*Gill v. Arab Bank, PLC*,
   893 F. Supp. 2d 474 (E.D.N.Y. 2012) .................................................................................... 8

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009) ..................................................................................................... 4

*In re CRM Holdings, Ltd. Sec. Litig.*,
   No. 10 Civ. 975 (RPP), 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ............................... 2-3

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 132 (D. Conn. 2014) ...................................................................................... 8

*Janbay v. Canadian Solar, Inc.*,
   No. 10 Civ. 4430, 2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013) ........................................... 2

*Jean-Charles v. Perlitz*,
   937 F. Supp. 2d 276 (D. Conn. 2013) ................................................................................. 7, 8

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
   No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ...................................... 6-7

*Mastafa v. Chevron Corp.*,
   759 F. Supp. 2d 297 (S.D.N.Y. 2010), *aff'd*, 770 F.3d 170 (2d Cir. 2014) ............................. 8

*People v. World Interactive Gaming Corp.*,
   185 Misc. 2d 852, 714 N.Y.S.2d 844 (Sup. Ct. N.Y. Cty. 1999) ............................................ 3

*Puddu v. 6D Global Techs., Inc.*,
   239 F. Supp. 3d 694 (S.D.N.Y. 2017)..............................................................................2

*Taggart v. United States*,
   63 F.2d 285 (10th Cir. 1933).............................................................................................9

*Unites States v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016) ................................................................................ 4-5

*United States v. Jennings*,
   280 F. App'x 836 (11th Cir. 2008) ...................................................................................7

*United States v. Marcus*,
   487 F. Supp. 2d 289 (E.D.N.Y. 2007),
   *rev'd on other grounds*, 538 F.3d 97 (2d Cir. 2008)...............................................10

**Statutes & Rules**

18 U.S.C. § 1591 *et seq.*................................................................................... passim

## PRELIMINARY STATEMENT

In Robert Weinstein's Moving Brief,[1] we explained how the conclusory allegations set forth in the Complaint could not possibly support a plausible claim against him under the federal Trafficking Victims Protection Act ("TVPA") in connection with the alleged sexual assault committed against Plaintiff Kadian Noble by defendant Harvey Weinstein in Cannes, France in 2014. Indeed, Mr. Weinstein pointed out that the Complaint does not allege a single action by him, let alone one remotely related to sex trafficking.

Unable to point to the allegations actually made in her Complaint, Plaintiff's Opposition now attempts to rely on allegations—drawn from a complaint filed by the New York Attorney General ("NYAG") seeking redress under different statutes—that Mr. Weinstein was involved with settlements with other women allegedly victimized by Harvey Weinstein. Plaintiff cannot properly rely on these allegations. But even if she could, they would not forestall dismissal of her claims. The allegations in the NYAG's complaint simply do not evince or suggest participation by Mr. Weinstein in a commercial sex trafficking scheme. And as the Opposition tacitly concedes, there is nothing else to support her claims against Mr. Weinstein.

## ARGUMENT

**I.   PLAINTIFF CANNOT CURE HER PLEADING DEFICIENCIES BY RELIANCE ON ALLEGATIONS IN ANOTHER COMPLAINT THAT HAVE NOTHING TO DO WITH SEX TRAFFICKING.**

In a belated attempt to remedy the Complaint's pleading deficiencies, Plaintiff asserts that Mr. Weinstein "used the device of nondisclosure agreements [NDAs] in settlements with victims to facilitate Harvey Weinstein's commercial sex act venture" and that Mr. Weinstein "paid for the settlements resulting in these agreements." (Opp. 5.) These allegations permeate Plaintiff's Opposition to Mr. Weinstein's motion. (*See, e.g., id.* 2, 10, 11, 14.)

---

[1] Unless otherwise noted, abbreviations used herein conform to those used in Mr. Weinstein's Moving Brief.

But despite Plaintiff's claim that "the Amended Complaint" alleges these activities by Mr. Weinstein (*id.* 10), these allegations *never* appear in the Complaint. Indeed, the Complaint contains no allegations that Mr. Weinstein had any involvement in procuring NDAs or settlement agreements with any alleged victims of Harvey Weinstein. Nor does it allege that Mr. Weinstein made settlement payments to any of Harvey Weinstein's alleged victims.

Rather, Plaintiff purports to take these allegations from a separate complaint filed by the NYAG against Harvey Weinstein, TWC, and Mr. Weinstein (the "NYAG Complaint"). (Opp. 5 (citing NYAG Compl. ¶¶ 8, 98).) Despite attaching the NYAG Complaint to her Complaint, and liberally quoting its allegations regarding *Harvey* Weinstein, Plaintiff did not quote or set forth the substance of the allegations on which she now attempts to rely anywhere in the Complaint. In short, the Complaint could not have put Mr. Weinstein on notice that these "allegations" were the basis for Plaintiff's claims.[2]

Plaintiff cannot rely on these allegations now to stave off dismissal. Plaintiff is not permitted to supplement the Complaint by asserting new factual allegations in her Opposition. *See, e.g., Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430, 2013 WL 1287326, at *7 (S.D.N.Y. Mar. 28, 2013) (Sweet, J.) ("[A] party is not entitled to amend its complaint through statements made in its opposition memoranda to a motion to dismiss.") (citations omitted). Moreover, Plaintiff cannot rely upon unproven allegations from a complaint in another action to remedy her own pleading failures. *See, e.g., Puddu v. 6D Global Techs., Inc.*, 239 F. Supp. 3d 694, 704 (S.D.N.Y. 2017) (Sweet, J.) ("[A]llegations in an SEC complaint cannot serve to allege adequately the instant claim."); *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975

---

[2] The paragraph from the NYAG Complaint regarding the alleged use of nondisclosure agreements (NYAG Compl. ¶ 8) is never even cited in the Complaint, and the paragraph regarding the alleged settlement payments by Mr. Weinstein (*id.* ¶ 98) is never cited in the "Factual Allegations" section of the Complaint; instead, it is referenced *only* within a range of paragraphs from the NYAG Complaint at the very end of the Complaint where Plaintiff sets forth one of the causes of action asserted against Mr. Weinstein (Compl. ¶ 72).

2

(RPP), 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) (refusing to consider allegations in an NYAG complaint on a motion to dismiss). Accordingly, Plaintiff's arguments derived from allegations in the NYAG Complaint should be disregarded for purposes of this Motion.[3]

Even if that were not the case, Plaintiff's reliance on the NYAG Complaint would still be misplaced, as the allegations in that complaint lend no support to her sex trafficking claim against Mr. Weinstein. The NYAG Complaint asserts claims against Mr. Weinstein under New York State Executive Law Section 63(12) based *only* upon alleged violations of state and city laws relating to gender-based workplace harassment and discrimination. (NYAG Compl. ¶¶ 119-139.) It contains *no* allegations that Mr. Weinstein (or anyone else) engaged in commercial sex trafficking—even though the NYAG could have brought such charges if he believed they were justified. *See, e.g., People v. World Interactive Gaming Corp.*, 185 Misc. 2d 852, 856, 714 N.Y.S.2d 844, 848 (Sup. Ct. N.Y. Cty. 1999) ("Any conduct which violates State *or Federal law* or regulation is actionable under [Exec. L. § 63(12)].") (emphasis added).

More specifically, there is not a single allegation in the NYAG Complaint that Mr. Weinstein participated in settlements with women who claimed that Harvey Weinstein had forced them to engage in a "commercial sex act" in which anyone received money or any other thing of value. Nor is there any allegation in the NYAG Complaint that Mr. Weinstein received any financial or other benefit from Harvey Weinstein's sexual misconduct, or that Mr. Weinstein knew or believed that Harvey Weinstein had used any "force, fraud or coercion" on the women

---

[3] Plaintiff argues that her reliance on the NYAG Complaint is permissible because "[a] pleading filed in another proceeding may be appended to and incorporated in a complaint where, as here, it does 'not pose any new allegations or legal theories separate from the content of the numbered paragraphs' of the complaint." (Opp. 4 n.1 (quoting *DLJ Mortgage Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 234 (E.D.N.Y. 2010).) But the NYAG Complaint does include both new allegations (Mr. Weinstein's alleged involvement in settlement agreements) and legal theories (gender-based workplace harassment and discrimination) that are not found in the numbered paragraphs of Plaintiff's Complaint and are completely separate from Plaintiff's sex trafficking theory.

who complained about his conduct.[4] As a result, Plaintiff's characterization of the NYAG Complaint as alleging that Mr. Weinstein used NDAs in settlement agreements "to facilitate Harvey Weinstein's *commercial sex act venture*" (Opp. 5; emphasis added) is a blatant misstatement and, therefore, insufficient to defeat Mr. Weinstein's motion to dismiss.[5]

Stripped of these deficient settlement-related claims, Plaintiff's remaining arguments simply regurgitate the conclusory allegations in the Complaint that offer nothing more than insufficient formulaic recitations of the elements of her claims (*see, e.g.,* Opp. 2-3 (citing Compl. ¶¶ 8-11), Opp. 3-4 (citing Compl. ¶¶ 72-73, 74-75, 76-77)), mandating dismissal of the Complaint as to Mr. Weinstein.[6]

## II. PLAINTIFF'S OPPOSITION PROVIDES NO BASIS TO SUSTAIN THE PARTICIPATION CLAIM AGAINST MR. WEINSTEIN.

The Opposition only highlights the Complaint's obviously deficient allegations against Mr. Weinstein as to each of the elements of a participation claim under Section 1591(a).

### A. The Opposition Does Not Identify Any Allegations in the Complaint Suggesting That Mr. Weinstein Participated in a Sex Trafficking Venture.

Plaintiff does not dispute that, to adequately plead Mr. Weinstein's participation in Harvey Weinstein's alleged commercial sex trafficking venture, the Complaint must plausibly

---

[4] Moreover, the NYAG Complaint refers only to settlements with TWC *employees*, not aspiring actresses such as Plaintiff. (*See* NYAG Compl. ¶¶ 8, 98.) Thus, Plaintiff's assertion that the NYAG Complaint shows that Mr. Weinstein "was involved in resolving complaints by aspiring actresses" (Opp. 11) is simply incorrect.

[5] The Opposition similarly distorts the allegation in the NYAG Complaint (¶ 98) that Mr. Weinstein admitted to the press that he paid for prior settlements. The article in question quotes Mr. Weinstein as stating that Harvey Weinstein asked him to write the check because he had been "fooling around with two women" and "didn't want his wife to find out," and that Mr. Weinstein knew of "nothing to indicate any kind of sexual harassment." *See* Ronan Farrow, *Harvey Weinstein's Secret Settlements* (Nov. 21, 2017), https://www.newyorker.com/news/news-desk/harvey-weinsteins-secret-settlements. This allegation therefore does not remotely support any claim that Mr. Weinstein knew or believed he was participating in sex trafficking.

[6] Plaintiff mistakenly seeks refuge in the principle that "the Court must take its [the complaint's] factual allegations to be true and draw all reasonable inferences in the plaintiff's favor." (Opp. 5.) It is well settled that, "although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted); (*see also* Mov. Br. 5-6).

4

allege that Mr. Weinstein "actually participated in a sex-trafficking venture." (Mov. Br. 8 (quoting *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).) But Plaintiff fails to point to a single allegation in the Complaint that satisfies this requirement.

Indeed, the only allegation from the Complaint Plaintiff cites is the conclusory claim that Mr. Weinstein "facilitated" Harvey Weinstein's international travel. (Opp. at 10 (citing Compl. ¶ 9).) As an initial matter, the Complaint does not contain a single factual allegation that Mr. Weinstein had any involvement in planning, paying for, or approving Harvey Weinstein's foreign travel. But even if it did, the Complaint acknowledges that such travel was intended to further "the promotion of TWC films and advancement of TWC projects" (Opp. 8)— not Harvey Weinstein's alleged commercial sex trafficking venture. Thus, the Complaint falls far short of plausibly alleging that Mr. Weinstein "actually participated in a sex-trafficking venture" by collaborating with Harvey Weinstein "for the purpose of furthering the sex trafficking." *Afyare*, 632 F. App'x at 286. Nor does Plaintiff even attempt to distinguish this Court's decision in *Doe v. Alsaud*, 12 F. Supp. 3d 674, 679 (S.D.N.Y. 2014), holding a similar conclusory assertion that the defendant "facilitated" sexual assault to be legally insufficient.

Beyond that allegation, Plaintiff bases her argument on the allegations from the NYAG Complaint regarding Mr. Weinstein's alleged involvement in settlements and the procurement of NDAs. (Opp. 10.) Tellingly, Plaintiff does not cite to the Complaint at all to support this argument. As discussed above, these NYAG allegations cannot be relied upon here and, in any event, do not give rise to any inference that Mr. Weinstein furthered a "violation of 18 U.S.C. § 1591(a)" (*id.*), which is nowhere alleged in the NYAG Complaint. Simply put, the Complaint does not contain even one non-conclusory allegation that Mr. Weinstein actually participated in a commercial sex trafficking venture, as required by Section 1591(a).

B.  **The Opposition Does Not Identify Any Allegations in the Complaint Suggesting that Mr. Weinstein Benefitted from Participation in a Sex Trafficking Venture.**

Nor does Plaintiff's Opposition do anything to explain how the Complaint alleges that Mr. Weinstein knowingly benefitted financially or otherwise from Harvey Weinstein's alleged commercial sex trafficking venture. (*See* Mov. Br. 10-11.) Instead, Plaintiff simply asserts that the Complaint alleges a "significant tie between [Harvey Weinstein's] commercial sex act scheme and the financial benefit to Bob Weinstein." (Opp. 8.) But neither of the two paragraphs Plaintiff cites for this assertion explains how Harvey Weinstein's alleged abuse of Plaintiff (or any other women) was "tied" to any benefit received by Mr. Weinstein.

Plaintiff's theory apparently is that because Mr. Weinstein benefitted from his brother's business activities in promoting and developing films for TWC, he also benefitted from his brother's sexual misconduct committed while traveling on TWC business. But that argument is a non-sequitur, and Plaintiff's own allegations demonstrate as much. Plaintiff does not allege that Harvey Weinstein's alleged abuse of her somehow made him more successful in promoting or developing films or furthered TWC's business in any fashion. To the contrary, her allegations make clear that personal sexual gratification, not economic interest, motivated his alleged wrongdoing. (Compl. ¶ 46.)

To successfully plead a Section 1591 claim, Plaintiff must allege a "causal relationship between the sex act" and the benefit allegedly received by the defendant. *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).[7] Alleging only that Mr. Weinstein benefitted from his business association with Harvey Weinstein "is simply not sufficient to establish a violation of 18 U.S.C.

---

[7] *See also Cabusao v. Lombardi*, No. 1:14CV74-HSO-RHW, 2015 U.S. Dist. LEXIS 185609, at *10 (S.D. Miss. Jan. 30, 2015) (plaintiff must allege facts showing how defendants "knowingly benefitted *from any alleged violation* of the human trafficking laws") (emphasis added).

6

§ 1591." *Id.*[8]

### C. The Opposition Does Not Identify Any Allegations in the Complaint Suggesting Mr. Weinstein's Knowledge of a Sex Trafficking Venture.

Plaintiff's arguments likewise fail to satisfy the final element of a participation claim—that Mr. Weinstein had personal knowledge of the existence of any alleged commercial sex trafficking venture, or at least recklessly disregarded it. (*See* Opp. at 10-12.)

First, Plaintiff directs the Court to three paragraphs of the Complaint that quote heavily from the NYAG Complaint, which she claims support her argument that Harvey Weinstein's sex trafficking venture was "known among executives of TWC." (*Id.* at 10 (citing Compl. ¶¶ 23-25).) But none of those three paragraphs even mentions Mr. Weinstein. Rather, they make allegations concerning the role played by female assistants and executives at TWC in facilitating Harvey Weinstein's "sexual encounters." Further, they say nothing about Harvey Weinstein's alleged use of force, fraud, or coercion. Thus, the cited paragraphs do not provide the allegations necessary to plead Mr. Weinstein's knowledge of a sex trafficking venture.

Second, Plaintiff again seeks to rely on her "allegations"—not contained in the Complaint—that Mr. Weinstein was involved in resolving complaints raised by alleged victims of Harvey Weinstein. (Opp. 10-11.) As set forth above, these allegations from the NYAG Complaint cannot be introduced in Plaintiff's Opposition to remedy her pleading deficiencies. In any event, they do not contain any allegation that the women who made complaints claimed that Harvey Weinstein had used force, fraud, or coercion to induce them to submit to commercial sex

---

[8] The cases cited by Plaintiff (Opp. 8-9) do not support a contrary result. In *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288 & n.12 (D. Conn. 2013), the court simply assumed without any analysis that it would be sufficient if the defendant benefitted financially from his connection with the school where the alleged abuse took place, rather than from the sex trafficking activity. And in *United States v. Jennings*, 280 F. App'x 836 (11th Cir. 2008), the evidence showed that the defendant directly received benefits of value (*e.g.*, transportation and boarding) from the primary actor, who was convicted of forcing a minor into prostitution, and was present where the victim was held against her will. *Id.* at 834-44. Here, of course, Plaintiff has not alleged that Mr. Weinstein had any actual involvement in any alleged commercial sex act, nor that he received any benefit or value from that purported commercial sex act.

7

acts, let alone that Mr. Weinstein was aware of any such claim. Therefore, these allegations too fail to adequately plead Mr. Weinstein's knowledge of any sex trafficking scheme.[9]

## III. PLAINTIFF'S OPPOSITION PROVIDES NO BASIS TO SUSTAIN THE AIDING AND ABETTING CLAIM AGAINST MR. WEINSTEIN.

In a vain attempt to distinguish the bedrock Supreme Court decision in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 171 (1994), Plaintiff argues that because the private right of action under Section 10(b) of the Securities Exchange Act at issue in *Central Bank* was "implied"—as opposed to the "express" cause of action in the TVPA—that case is inapplicable. (Opp. 12-14.) This argument is meritless.

Numerous courts have applied *Central Bank* to preclude aiding and abetting claims under federal statutes that create an express private right of action. *See, e.g., Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 497-502 (E.D.N.Y. 2012) (Anti-Terrorism Act).[10] That conclusion is plainly correct, as the Supreme Court made clear that its default rule against inferring aiding and abetting liability applies even "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm." *Central Bank*, 511 U.S. at 182; *see also Gill*, 893 F. Supp. 2d at 500 ("[T]hat *Central Bank* dealt with an implied private right of action is irrelevant. *Central Bank*'s analysis did not distinguish between express rights of action and those that are implied.").

---

[9] Plaintiff asserts that the Complaint alleges more than what the district court found to be sufficient to deny a motion to dismiss in *Perlitz*. (Opp. 11-12.) That assertion is specious. The defendant in *Perlitz* (who had had his own inappropriate sexual relationship with the perpetrator) was alleged to have known that at least one student was actually living with the perpetrator, to have "witnessed [the perpetrator] show at least one student a pornographic video" in the perpetrator's bedroom, and to have stopped communicating with a school official who confronted the perpetrator about his sexual abuse of children. *Perlitz*, 937 F. Supp. 2d at 280, 288. The court found these allegations sufficient to plead the defendant's knowledge of a violation of the provision in Section 1591 prohibiting sex trafficking involving minors. The Complaint here makes no remotely analogous allegations regarding Mr. Weinstein's knowledge of Harvey Weinstein's use of force, fraud, or coercion to engage in commercial sex acts.

[10] *See also In re Trilegiant Corp.*, 11 F. Supp. 3d 132, 138-40 (D. Conn. 2014) (RICO); *Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010), *aff'd*, 770 F.3d 170 (2d Cir. 2014) (Torture Victims Protection Act); *City of New York v. Milhelm Attea & Bros., Inc.*, No. 06-CV-3620 (CBA), 2009 WL 701005, at *2-7 (E.D.N.Y. Mar. 11, 2009) (Contraband Cigarette Trafficking Act).

Plaintiff also argues that Congress intended for civil aiding and abetting liability under the TVPA because the statute authorizes civil actions against those who knowingly benefit, financially or otherwise, from participation in a sex trafficking venture. (Opp. 13 (citing 18 U.S.C. § 1595(a)).) But that language merely echoes the requirements for a Section 1591(a) participation claim. What is missing from Section 1595(a)—and what *Central Bank* requires—is an express statement by Congress that *aiders and abettors* may be held civilly liable. *See Central Bank*, 511 U.S. at 177 ("If … Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.").[11]

Finally, even if the TVPA did recognize aiding and abetting claims (which it does not), nothing in Plaintiff's Opposition cures the Complaint's failure to adequately plead the elements of such a claim. (*See* Mov. Br. 14-15.) Here again, Plaintiff's argument relies entirely on her "allegations" of Mr. Weinstein's "involvement in the handling of complaints against Harvey and the payments to victims in exchange for NDA's [sic]." (Opp. 14-15.) For the reasons set forth above, those allegations do not support a claim that Mr. Weinstein knowingly provided substantial assistance to Harvey Weinstein's alleged sexual assault of Plaintiff—an assault that Mr. Weinstein is not alleged to have played any role in or even known about.[12]

---

[11] Even if the parenthetical phrase in Section 1595(a) could be viewed as creating some form of "secondary liability," as Plaintiff asserts (Opp. 13), it does *not* create aiding and abetting liability. This is also fatal to Plaintiff's argument. *See Central Bank*, 511 U.S. at 184 (holding that Congress' imposition of secondary liability on control persons under the securities laws demonstrates that it did not intend to impose liability on aiders and abettors; "[t]he fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which courts should not interfere"). Moreover, Plaintiff's argument that courts have found aiding and abetting liability in *criminal* cases under Section 1591 (Opp. 14) is irrelevant. Such liability is imposed pursuant to 18 U.S.C. § 2, which applies only in criminal cases. *See Central Bank*, 511 U.S. at 190.

[12] Absent the "NDA allegations," Plaintiff is left pointing only to the fact that Mr. Weinstein was chairman of TWC and, therefore, must have had knowledge of Harvey Weinstein's "pattern of conduct." (Opp. 14-15.) In support of this baseless argument, Plaintiff cites to an 85-year-old Tenth Circuit case, *Taggart v. United States*, 63 F.2d 285 (10th Cir. 1933), which she incorrectly asserts upheld an aiding and abetting fraud conviction based on the defendant's alleged "control of the business." In fact, the proof at trial showed that the defendant assisted in preparing the fraudulent circular at issue with knowledge of its falsity. *See id.* at 287.

9

## IV. PLAINTIFF'S OPPOSITION FAILS TO EXPLAIN HOW THE TVPA APPLIES TO THE ISOLATED ASSAULT ALLEGED IN THE COMPLAINT.

Plaintiff's feeble attempt to address Mr. Weinstein's arguments that the conduct Plaintiff has alleged does not implicate the TVPA also should be rejected. While Plaintiff accuses Mr. Weinstein of "attempting to minimize the plain meaning of the statutory language" (Opp. 15), in fact Mr. Weinstein's arguments are anchored firmly in the statutory text, as well as its purpose, and in particular the requirements that Plaintiff allege a "venture" and a "commercial sex act." (Mov. Br. 15-20.) Plaintiff has failed to rebut our argument on either point.

First, to plead a "venture" under the TVPA, Plaintiff must allege the existence of "any group of two or more individuals associated in fact" for the purpose of engaging in sex trafficking. (Mov. Br. 17-18; § 1591(e)(5).) But the Opposition, like the Complaint, makes no attempt to allege that anyone other than Harvey Weinstein shared this purpose. Instead, Plaintiff conflates the standards for pleading participation in a venture with the standard for pleading the venture itself. (*See* Opp. 9 n.4.) That interpretation would improperly dilute the statutory requirement of a "venture" and render it all but meaningless.

Next, Plaintiff argues that the Complaint pleads the existence of a "commercial sex act" because Harvey Weinstein allegedly gave her "the promise of a role in a film and entertainment project." (Opp. 16.) Plaintiff simply has ignored the case law cited in Mr. Weinstein's Moving Brief in which courts have held that to adequately plead a commercial sex act, a complaint must allege that the victim was "sexually exploited for profit," *see United States v. Marcus*, 487 F. Supp. 2d 289, 307 (E.D.N.Y. 2007), *rev'd on other grounds*, 538 F.3d 97 (2d Cir. 2008), *i.e.*, that the defendants (not the victim) profited. (Mov. Br. 15-16, 19-20.) By contrast, Plaintiff cites no case to support her position that a violation of the TVPA can be established where only the alleged victim is motivated by a potential economic gain.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in Mr. Weinstein's Moving Brief, the Court should dismiss Counts III and V of the Complaint in their entirety and with prejudice.

Dated: New York, New York
      June 19, 2018

SCHULTE ROTH & ZABEL LLP

By:   /s/ Gary Stein
     Barry A. Bohrer
     Gary Stein
     Brian T. Kohn
     Carly J. Halpin

919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000
Facsimile: 212.593.5955
E-mail: barry.bohrer@srz.com
        gary.stein@srz.com
        brian.kohn@srz.com
        carly.halpin@srz.com

*Attorneys for Defendant Robert Weinstein*