UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KADIAN NOBLE,<br><br>    Plaintiff,<br><br>  -against-<br><br>HARVEY WEINSTEIN, BOB WEINSTEIN and THE WEINSTEIN COMPANY LLC,<br><br>    Defendants. | 1:17-cv-09260 (RWS) |

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO CERTIFY THE AUGUST 14, 2018 OPINION AND ORDER
FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND
TO STAY PROCEEDINGS PENDING RESOLUTION OF § 1292(B) PROCEEDING**

KUPFERSTEIN MANUEL LLP
Phyllis Kupferstein
865 South Figueroa Street, Suite 3338
Los Angeles, California 90017
(213) 988-7531
pk@kupfersteinmanuel.com

  and

MORRISON COHEN LLP
Mary E. Flynn
909 Third Avenue
New York, New York 10022
(212) 735-8631
mflynn@morrisoncohen.com

*Attorneys for Defendant Harvey Weinstein*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT ................................................................................................................................. 4

    I.    THE COURT SHOULD CERTIFY ITS ORDER
         FOR APPEAL UNDER § 1292(b) ............................................................................ 4

        A.    Whether Under The Trafficking Statute, A "Commercial
             Sex Act" Includes An Alleged Sex Act For Which No Benefit
             Is Provided Is A Controlling Question Of Law ....................................................... 5

        B.    There Exist Substantial Grounds For Difference Of Opinion
             With The Court's Resolution Of The Question ....................................................... 5

        C.    An Interlocutory Appeal May Result In The Termination Of This Litigation ..... 10

    II.   THE COURT SHOULD STAY THE CASE PENDING THE § 1292(b) APPEAL .... 10

    III.  CONCLUSION ................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Adelphia Communs. Corp. Sec. & Derivative. Litig.*,
  No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 11743, 2006 WL 708303
  (S.D.N.Y. Mar. 20, 2006) ...............................................................................................6

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1982) ........................................................................................5

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 2011) ........................................................................................8

*Gonzales v. Raich*,
  545 U.S. 1, 125 S. Ct. 2195 (2005) .................................................................................8

*Keller v. Lee*,
  No. 96 Civ. 4168, 1997 U.S. Dist. LEXIS 7519, 1997 WL 289853
  (S.D.N.Y. May 28, 1997) ................................................................................................6

*Kersh v. General Council of the Assemblies of God*,
  535 F. Supp. 494 (N.D. Cal. 1982), *overruled in part on other grounds by
  Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990) ...................................5

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ..............................................................................................6

*Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.*,
  No. 10-CV-4124, 2013 U.S. Dist. LEXIS 180463, 2013 WL 6816174 (WD.
  Ark. Dec. 24, 2013), *vacated in part, aff'd in part*, 2014 U.S. Dist. LEXIS 529
  (W.D. Ark. Jan. 2, 2014) .................................................................................................9

*LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*,
  No. 92 Civ. 7584, 2000 U.S. Dist. LEXIS 5154 (S.D.N.Y. Apr. 18, 2000) ....................5

*Marsall v. City of Portland*,
  No. CV-01-1014-ST, 2004 U.S. Dist. LEXIS 15976 (D. Or. Aug. 9, 2004) ..................5

*United States v. Campbell*,
  111 F. Supp. 3d 340 (W.D.N.Y. 2015) ...........................................................................8

*United States v. Clark*,
  435 F.3d 1100 (9th Cir. 2006) ........................................................................................8

*United States v. Estrada-Tepal*,
    57 F. Supp. 3d 164 (E.D.N.Y. 2014) ................................................................................1

*United States v. Evans*,
    476 F.3d 1176 (11th Cir.), *cert. denied*, 552 U.S. 878 (2007) .......................................6

*United States v. Flanders*,
    752 F.3d 1317 (11th Cir. 2014) ........................................................................................8

*United States v. Morrison*,
    529 U.S. 598, 120 S. Ct. 1740 (2000) ..........................................................................3, 8

*United States v. Paris*,
    No. 03:06-cr-64, 2007 U.S. Dist. LEXIS 78418, 2007 WL 3124724
    (D. Conn. Oct. 23, 2007) ..................................................................................................8

*United States v. Reed*,
    No. 15-cr-188, 2017 U.S. Dist. LEXIS 118020, 2017 WL 3208458
    (D.D.C. July 27, 2017) .....................................................................................................8

*United States v. Tutstone*,
    525 F. App'x 298 (6th Cir. 2013) .....................................................................................8

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 22718, 2003 WL 22953644
    (S.D.N.Y. Dec. 16, 2003) .................................................................................................6

**Statutes**

18 U.S.C. § 1591 ..............................................................................................................1, 5

18 U.S.C. § 2423 .....................................................................................................................8

28 U.S.C. § 1292 ............................................................................................................ *passim*

42 U.S.C. § 13981 ...................................................................................................................3

Defendant Harvey Weinstein ("Defendant" or "Weinstein") moves for an Order [1] certifying the Court's August 14, 2018 Order ("Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and [2] staying proceedings in this Court pending the Second Circuit's resolution of the § 1292(b) appeal. The Order recognizes that an unsettled question of Federal law controls Plaintiff's ability to proceed with her suit under 18 U.S.C. § 1591:

> It is fair to say that these allegations present an extension of an element of Section 1591 on which there is little to no prior authority. What follows is an effort, aided by the tools of statutory construction, to navigate these uncharted waters.

Order at 28.  Specifically, the question is whether the Trafficking Victims Protection Act, 18 U.S.C. § 1591 *et seq.* (the "Trafficking Statute") encompasses non sex-trafficking allegations such as is the case here, where the allegations are that Plaintiff met Defendant at an industry event to which she traveled on her own without invitation or enticement from Defendant, and she engaged in unwanted sexual contact with Defendant because she believed he would help her acting career, but he did not.  In other words, does the Trafficking Statute apply in the absence of an actual *quid pro quo* exchange of value?  In *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164 (E.D.N.Y. 2014), on which the Order relies, for example, District Judge Margo K. Brodie wrote:

> In fact, the Court is not aware of an application of 18 U.S.C. § 1591 to anyone other than an individual directly and substantially involved in an underlying sex trafficking scheme.

(*Id.* at 171 n. 7; citations omitted).  This matter before the Court is apparently the first to do so.

Summarized, Plaintiff alleges the following: Plaintiff was at the Cannes Film Festival and ran into Defendant in the lobby of his hotel; Defendant invited Plaintiff to meet in his hotel room; Plaintiff agreed because she believed that it would benefit her career; Defendant sexually assaulted her; and Defendant failed to provide Plaintiff with any career benefit when Plaintiff followed up with Defendant for two years after the alleged assault.  Four years after the alleged

1

assault – after the statute of limitations for assault had long since expired – Plaintiff sued, arguing a novel construction of the Trafficking Statute. The Order's holding that the Trafficking Statute covers such non-trafficking conduct is the first of its kind and has far reaching implications in civil and criminal cases.

The term "commercial sex act" in the Trafficking Statute is defined to require that something of value be exchanged for sex – a *quid pro quo*. It is not clear that under the Trafficking Statute, the Plaintiff's belief that she might receive something of value (an unspecified film role in the future) makes an alleged sex act a "commercial" sex act, when no role or other benefit was actually provided. The Order holds that the term "commercial sex act" need not involve any economic component because of the Trafficking Statute's reference to the exchange of "anything of value." Order at pp. 28-31. But where, as here, there is no trafficking alleged, there <u>must</u> be an economic component to a violation of the Trafficking Statute. To hold otherwise is to interpret the Trafficking Statute out of existence because it would be unconstitutional. The Order's reading of the Trafficking Statute, which holds that no actual exchange of value is required but that a fraudulent "promise[]" satisfies the commercial component of the Statute, and which conflates the "fraud" and "value" elements of the claim, essentially makes every sex crime a violation of the Trafficking Statute. Without a true economic component required, every alleged forcible sexual assault in which the victim complies with the assault in order to preserve her safety, for example, would give rise to a claim covered by the Trafficking Statute. A victim's belief that compliance would decrease the likelihood of additional injury would be sufficient to make the attack a "commercial sex act" under the Order's interpretation of the Trafficking Statute. But that is not what the Trafficking Statute is intended to cover and, if it were, it would not withstand constitutional scrutiny.

The United States Supreme Court addressed a similar issue in *United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740 (2000). In *Morrison*, a victim of sexual assault sued her alleged attackers pursuant to 42 U.S.C. § 13981 ("§ 13981"), which provided a federal civil remedy for the victims of gender-motivated violence. The Supreme Court affirmed the Fourth Circuit's determination that Congress lacked the authority under the Constitution to enact § 13981's civil remedy because these crimes did not constitute economic activity. *Id*. at 610, 120 S. Ct. at 1750. The Supreme Court expressly held that Congress cannot regulate activity under the Commerce Clause based on a finding that the activity was related to the economic productivity of individual citizens. *Id*. at 613, 120 S. Ct. at 1751. If the Trafficking Statute is read to include noneconomic conduct as alleged in this case and as the Order provides (no actual exchange of value required), then the Trafficking Statute will meet the same fate as § 13981.

This question is therefore clearly appropriate for immediate appeal under § 1292(b). It is purely a controlling legal question involving the construction of a federal statute, and thus does not depend upon the development of any facts in this case. The question, as this Court held, is one on which there is "little to no prior authority" – but rather, requires the Court to "navigate … uncharted waters," *see* Order at p. 28, and there are substantial grounds for disagreeing with the Court's resolution of it. Further, the question materially advances, and is almost certainly dispositive of, this litigation. If the Second Circuit answers the question differently, then Plaintiff's case is over, and the courts in this Circuit (and this District, in particular) will not have to deal with a wave of new Trafficking Statute cases that other Plaintiffs suing Defendant will not hesitate to file in light of the Order. There are already currently six cases pending alleging

claims by other individuals against Defendant in this District, and it is expected that some will seek to add a Trafficking Statute claim based on the Order.[1]

A stay pending the § 1292(b) appeal will conserve both the parties' and the Court's resources. A stay will avoid costly discovery and motion practice, all of which may be mooted by a contrary ruling from the Second Circuit. And a stay will not prejudice Plaintiff. The conduct on which she has sued allegedly occurred four years before she brought her action, and Defendant is prepared to expedite his appeal.

## ARGUMENT

### I. THE COURT SHOULD CERTIFY ITS ORDER FOR APPEAL UNDER § 1292(b)

An Order is appropriate for interlocutory appeal under 28 U.S.C. § 1292(b) if:

- The Order "involves a controlling question of law";

- There is "substantial ground for difference of opinion" as to that question; and

- "[A]n immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"

*See* 28 U.S.C. § 1292(b).[2]  The Court's Order easily satisfies all three criteria.

---

[1] In fact, there has already been (at least) one complaint filed against Defendant alleging this novel civil application of the Trafficking Statute since the date that this Court issued the Order. *See Emma Loman v. Harvey Weinstein*, Index No. 2:18-cv-07310 (C.D. Cal), Dkt. No. 1, Compl., dated August 20, 2018 (alleging a non-sex trafficking violation of the Trafficking Statute based on alleged unwanted sexual contact that occurred in 2006).

[2] Section 1292(b) provides:
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

A.  **Whether Under The Trafficking Statute, A "Commercial Sex Act" Includes An Alleged Sex Act For Which No Benefit Is Provided Is A Controlling Question Of Law**

The question that the Order answers, and that Defendant seeks to appeal immediately, is purely legal: whether the term "commercial sex act" in 18 U.S.C. § 1591(a) requires that the victim allege that he or she was sexually exploited for profit, or that something of actual value – as opposed to value hoped for or believed by the victim – was exchanged. That question requires the interpretation of a federal statute, a task that by definition does not depend on the development of any facts in this case.

That legal question also is controlling. A question is "controlling" if "resolution of the issue on appeal could *materially affect* the outcome of litigation in the district court." *LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*, No. 92 Civ. 7584, 2000 U.S. Dist. LEXIS 5154, at *7-8, 12 (S.D.N.Y. Apr. 18, 2000) (emphasis in the original) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) and holding "that certification of this Court's … Order for interlocutory appeal is not only appropriate under § 1292(b), it is highly desirable"). If the Second Circuit decides that "commercial sex act" requires the allegation of an actual exchange (not the erroneous belief) of value, then Plaintiff's case is over – she has not alleged a Trafficking Statute claim.

B.  **There Exist Substantial Grounds For Difference Of Opinion With The Court's Resolution Of The Question**

There is "a substantial ground for difference of opinion" when a controlling legal question "is difficult and of first impression." *Marsall v. City of Portland*, No. CV-01-1014-ST, 2004 U.S. Dist. LEXIS 15976, at *20 (D. Or. Aug. 9, 2004) (quotation omitted); *see also Kersh v. General Council of the Assemblies of God*, 535 F. Supp. 494, 498 (N.D. Cal. 1982) (finding substantial grounds on "difficult questions of first impression in this Circuit"), *overruled in part*

5

on other grounds by *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (holding that "substantial grounds for difference of opinion" exist when the "issues are difficult and of first impression"). It also may arise from a healthy division and debate among the district courts. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 22718, at *20, 2003 WL 22953644, at *6 (S.D.N.Y. Dec. 16, 2003) (finding substantial difference of opinion among "a handful of courts elsewhere" plus "at least one member of the Second Circuit"); *Keller v. Lee*, No. 96 Civ. 4168, 1997 U.S. Dist. LEXIS 7519, at *2, 1997 WL 289853, at *1 (S.D.N.Y. May 28, 1997) (noting generally that "[t]he courts that have considered this issue have come to divergent results"). And, of course, the absence of controlling authority in the Second Circuit weighs heavily in the determination. *See In re Adelphia Communs. Corp. Sec. & Derivative. Litig.*, No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 11743, at *10, 2006 WL 708303, at *4 (S.D.N.Y. Mar. 20, 2006).

As the Order acknowledges, the Second Circuit has not reached the issue of whether the Trafficking Statute applies to a situation where there was no allegation of "trafficking,"[3] no *quid pro quo*, no conferring of a real benefit, and no actual value provided. In fact, no case was cited in any of the litigants' briefs, or in the Order, where the Trafficking Statute was applied to a situation that did not involve an allegation that a victim had been smuggled into the U.S. for prostitution, enslaved, given drugs for sex, or where the victim was a juvenile. All prior reported cases under the Trafficking Statute involved trafficking.

---

[3] Congress, in passing the Trafficking Statute, which "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain," defined "human trafficking, particularly of women and children in the sex industry, [as] a modern form of slavery, and it is the largest manifestation of slavery today." *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir.) (internal quotation omitted), *cert. denied*, 552 U.S. 878 (2007).

The Trafficking Statute has not been held to apply to a case where the allegation is that an adult was not enticed to travel, the adult voluntarily associated with another based on a belief that he or she would derive a benefit from the association; alleged unwanted sexual activity ensued; the benefit was never provided; and the individual sued years later claiming that the defendant never really intended to confer a benefit.  The Order holds that a private meeting alone was an item of value alleged to have been given to Plaintiff by Defendant, because it was reasonable for Plaintiff to believe that Defendant would help her career.  *See* Order at p. 30.  But according to the Amended Complaint, any such meeting had no actual value because Defendant is alleged not to have intended to help Plaintiff, but to have fraudulently intimated he would do so.  *See* Dkt. No. 48, Am. Compl. (the "Amended Complaint"), at ¶ 55.  It is not alleged that Defendant gave her something of value in exchange for sex.  Instead, her allegation is that she did not get anything of value (like a film role) in exchange for the allegedly unwanted sexual contact.

The Trafficking Statute requires that value is actually exchanged; however, the Order holds that a "reasonable expectation of receiving [value] in the future … is sufficient."  Order at p. 31.  No case law has extended the Trafficking Statute to apply in the absence of value actually being given to or received by either the plaintiff or the defendant.[4]  That is, when fraud has been alleged to cause the purported victim to engage in alleged sex acts, the alleged victim has either received something of value (such as drugs), or the defendant has received payment of money or pornographic images from the persons who engaged in sex with the alleged victim.  *See*, *e.g.*,

---

[4] Even if the prior case law had extended the Trafficking Statute to apply in the absence of actual value being exchanged by the parties, the Amended Complaint does not allege that Defendant promised value to Plaintiff to cause her to engage in a sex act.  Instead, the Amended Complaint alleges that Defendant "had an acting role in mind for her," and that if she "relaxed," his people "would take care of everything for her."  Amended Complaint at ¶¶ 16, 29 & 37.  The Amended Complaint does not allege that Defendant uttered any words, in sum or substance, that included a promise of a film role.  The conclusion drawn by counsel in the pleading that the quotes above constitute a promise that Plaintiff would be given a film role is not controlling.  According to the actual factual allegations in the Amended Complaint, no promise was made, and no value was provided to Plaintiff.

7

*Ditullio v. Boehm*, 662 F.3d 1091, 1095 (9th Cir. 2011); *United States v. Tutstone*, 525 F. App'x 298, 304 (6th Cir. 2013); *United States v. Flanders*, 752 F.3d 1317, 1331 (11th Cir. 2014). And, as set forth above, if the Trafficking Statute is interpreted as not requiring a real value exchange, then the Trafficking Statute is unconstitutional under the Supreme Court's reasoning in *United States v. Morrison*, 529 U.S. at 672, 120 S. Ct. at 1750 ("In a sense any conduct in this interdependent world of ours has an ultimate commercial origin or consequence, but we have not yet said the commerce power may reach so far.").

Other courts have recognized the essential element of a commercial transaction in a claim under the Trafficking Statute. *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006) ("[I]n the most sterile terms, the statute covers the situation where a U.S. citizen engages in a commercial transaction through which money is exchanged for sex acts."); *United States v. Campbell,* 111 F. Supp. 3d 340, 345 (W.D.N.Y. 2015) (citing *United States v. Paris*, No. 03:06-cr-64, 2007 U.S. Dist. LEXIS 78418, at *23-24, 2007 WL 3124724, at *8 (D. Conn. Oct. 23, 2007) (to constitute a commercial sex act, the transaction must be "economic in nature")). In the context of the definition of "commercial sex acts" in subsection (f)(2) of the Trafficking Statute, the court in *United States v. Reed*, No. 15-cr-188, 2017 U.S. Dist. LEXIS 118020, at *29-30, 2017 WL 3208458, at *10 (D.D.C. July 27, 2017), cited the Supreme Court's explanation of "economics" in *Gonzales v. Raich*, 545 U.S. 1, 25, 125 S. Ct. 2195, 2210 (2005): "'Economics' refers to the production, distribution, and consumption of commodities." *Id.* The *Reed* court explained that an analogous statute criminalizing the transportation of minors, 18 U.S.C. § 2423, is "a quintessential regulation of **economic** activity." *Id*. (emphasis added).

The Court's resolution of this controlling question of law is both difficult and a matter of first impression. The Order expressly finds that the question "requires navigating uncharted

waters." Order at p. 28. This question also is an important one because the application of the Trafficking Statute to the type of activity alleged here will result in a proliferation of cases being filed in non-trafficking contexts.

There is no case law to support the application of the Trafficking Statute to the non-trafficking conduct alleged here.  There *is* case law to support Defendant's argument that it does not apply, however.  In *Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 U.S. Dist. LEXIS 180463, at *52, 2013 WL 6816174, at *16 (WD. Ark. Dec. 24, 2013), *vacated in part, aff'd in part*, 2014 U.S. Dist. LEXIS 529, at *8 (W.D. Ark. Jan. 2, 2014), the Court denied the plaintiffs' claim under the Trafficking Statute because there was no *quid pro quo* given.  Indeed, in *Kolbeck*, something of value was given (housing and other expenses) – just not in exchange for the sex.  Here, the Order holds that something of value was alleged to have been given – a meeting with a prominent film producer – but even that, too, was not in exchange for sex.  Plaintiff alleges that she obtained the meeting regardless of the alleged sexual activity.  The Order's analysis of the value element required in the Trafficking Statute conflates the fraud element of the Trafficking Statute.  Just as a false promise of a green card to trafficked women might satisfy the fraud element of the Statute, it is not a thing of value because it is an empty promise.  The commercial element is satisfied in such a typical trafficking situation by the payment of money by the trafficked women's patrons to the defendant trafficker.  Here, there was nothing of value alleged to have been received by either Plaintiff or Defendant in exchange for sex.

Defendant recognizes that the Court found that the Trafficking Statute covers the non-trafficking conduct alleged in the Amended Complaint.  The question under § 1292(b), however,

9

is whether Defendant's argument provides "substantial grounds" for a different result.[5] Defendant respectfully submits the answer to that question is yes, and that this question of first impression merits interlocutory review.

### C. An Interlocutory Appeal May Result In The Termination Of This Litigation

The Second Circuit's resolution of the question whether the Trafficking Statute applies to the non-trafficking type of conduct alleged here has the potential not only to "materially advance" this litigation, but even to necessitate the "termination of the litigation[.]" 28 U.S.C. § 1292(b). As discussed above, if the Second Circuit holds that "commercial sex act" requires an allegation of a *quid pro quo* exchange of actual value, then Plaintiff's case is over.[6]

An immediate appeal not only will resolve a dispositive question in this case but also determine the limits (if any) on the filing of future Trafficking Statute cases in the federal courts and, in particular, the Southern District of New York. Giving the Second Circuit the opportunity to address this now, not later after numerous plaintiffs assert similar claims, will allow the Circuit to settle the law on this important issue before numerous other motions are filed to dismiss similar claims.

## II. THE COURT SHOULD STAY THE CASE PENDING THE § 1292(b) APPEAL

If the Court certifies the Order for a § 1292(b) appeal, the case should be stayed in this Court until the Second Circuit resolves that appeal. A stay will not change the *status quo* in this

---

[5] In a litigation that was removed to the United States District Court for the Central District of California just last month, plaintiff (who is represented by the same attorneys as Plaintiff in the action at hand) alleges, like here, a non-sex trafficking violation of the Trafficking Statute based upon alleged unwanted sexual contact with Defendant in 2010 because she believed he would help her acting career with a "promise to her of a television role" that never materialized. *Dominique Huett v. The Weinstein Company LLC et al.*, Index No. 2:18-cv-06012-SVW-MRW (C.D. Cal.), Dkt. No. 1-5, Am. Compl. at ¶¶ 45-46. In a status conference held before District Court Judge Stephen V. Wilson on August 20, 2018, Judge Wilson expressed surprise at the attempted civil litigation application of the Trafficking Statute to the facts alleged, noted that he had read this Court's August 14, 2018 Order, and stated that while the facts alleged in the two the matters might differ, the Central District of California is not bound by this Court's Order. *See* Declaration of Mary E. Flynn, dated August 27, 2018, at Exhibit B.

[6] The Order dismissed Defendant Bob Weinstein from this case, and the case is stayed as to Defendant The Weinstein Company LLC due to its bankruptcy filing.

litigation. The Court has not issued a case management order, and the parties have not yet served discovery.

If the Second Circuit accepts Defendant's argument, then this case will be over and the stay will have saved the parties, and the Court, from the time and expense of needless discovery and motion practice. The costs associated with this litigation will be significant. Insofar as the events are alleged to have occurred many years ago and to involve former employees of The Weinstein Company located outside the United States, discovery will be expensive. A stay will defer, and potentially moot, all of this burden and expense.

In contrast, there is no prejudice to Plaintiff from a stay. Plaintiff waited four years to sue, until after traditional claims based on the conduct alleged were time barred. An immediate appeal will put the novel claim she alleges (in order to avoid the statute of limitations) before the Second Circuit and give that Court the opportunity to issue a definitive ruling on the law of this Circuit.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully submits that the Court's Order presents a clear case for immediate interlocutory review, and that all considerations of case management and equity weigh in favor of a stay.

Dated: August 27, 2018

                                            KUPFERSTEIN MANUEL LLP

                                            By: */s/ Phyllis Kupferstein*
                                            865 South Figueroa Street, Suite 3338
                                            Los Angeles, California 90017
                                            (213) 988-7531
                                            pk@kupfersteinmanuel.com

                                                  and

                                            MORRISON COHEN LLP

                                            By:   */s/ Mary E. Flynn*
                                                        Mary E. Flynn
                                                        Aaron M. Schue
                                            909 Third Avenue
                                            New York, New York 10022
                                            (212) 735-8631
                                            mflynn@morrisoncohen.com

                                            *Attorneys for Defendant Harvey Weinstein*