UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Kadian Noble,

Plaintiff,

–v–

Harvey Weinstein, *et al.*,

Defendants.

17-cv-09260 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff brings suit under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §

1591 *et seq.*, based on allegations that Defendant Harvey Weinstein[1] sexually assaulted her in

2014.  Weinstein brings this motion seeking the certification of an interlocutory appeal of the late

Judge Sweet's decision denying in part Defendants' motion to dismiss.  For the reasons given

below, the Court DENIES Weinstein's request to certify an interlocutory appeal.

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of the

case.  The Court here will provide only Plaintiff's allegations that are related to the present

motion.  These allegations are taken as true at this stage of the litigation.  *See Koch v. Christie's

Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  At the time of the events at issue, Noble was an

aspiring actress and Weinstein was a "renowned film producer."  Amended Complaint, Dkt. No.

---

[1] While Harvey Weinstein's brother, Robert, was previously a party to this case, Robert Weinstein is not
relevant to the disposition of this motion.  The Court will hereinafter refer to Harvey Weinstein as "Weinstein" for
the purposes of this Opinion and Order.

48 ¶¶ 7, 15.  Noble alleges that Weinstein represented to her that he would assist her career in various ways.  *Id.*  ¶¶ 15-39.  At a social function in February 2014, Weinstein told Noble that "he had an acting role in mind for her and insisted that 'it will be good for [her]'" before having a Weinstein Company executive take down Noble's contact information and "repeating to [Noble] that the role he had in mind 'will be good for [her].'"  *Id.* ¶¶ 15-16.  Weinstein "promised [Noble] a role in [the Weinstein Company] project and further that he would use his influence and power to advance her acting and modeling career."  *Id.* ¶ 19.

Later, at the Cannes Film Festival in May 2014, Weinstein invited Noble to his hotel room to view her film reel and "to discuss further steps regarding the role he had promised her."  *Id.* ¶ 27.  In the hotel room, Weinstein told Noble that "his people" would "'take care of everything' for her," that a specific assistant "will be on this task," and that he would set up a meeting for Noble with a modeling agency.  *Id.*  ¶ 29.  Weinstein also put Noble on the phone with a Weinstein Company producer in the United States who told Noble that "she needed to be 'a good girl and do whatever [Harvey] wished,' and if she did, then 'they would work' with her further."  *Id.* ¶ 31.  Weinstein then proceeded to physically force Noble to engage in sexual activity with him.  *Id.*  ¶¶ 32-37.  Noble physically struggled at first, but Weinstein overcame her resistance.  *Id.* ¶ 37.  Weinstein then "told [Noble] to relax and 'everything will be taken care of for you if you relax'" which she understood as meaning that Weinstein "would use his influence and connections to advance her career if she allowed him to complete the sex act."  *Id.* Weinstein then completed the sex act.  *Id.* ¶ 38.  As to Weinstein's assurances of career assistance, these never materialized.  *Id.* ¶¶ 41-46.

Noble brought the instant lawsuit on November 27, 2017.  Dkt. No. 1.  Weinstein moved to dismiss Noble's claims on March 27, 2018.  Dkt. No. 59.  After hearing oral argument on the

motion, on August 14, 2018, Judge Sweet granted the motion to dismiss in part and denied it in part.  Dkt. No. 84.  On August 27, Weinstein moved for certification of an interlocutory appeal as to the August 14 Opinion and Order.  Dkt. No. 88.  Weinstein also sought a stay pending resolution of the interlocutory appeal if the certification were to be granted.  *Id.*  On March 24, 2019, Judge Sweet passed away, and this case was assigned to the undersigned.  Dkt. Nos. 116 & 117.  The Court now turns to Weinstein's motion.

## II. LEGAL STANDARD

"28 U.S.C. § 1292(b) allows for an appeal from an otherwise unappealable interlocutory order upon consent of both the district court and the Court of Appeals." *Frederick v. New York City*, No. 11-cv-469 (JPO), 2013 WL 310441, at *5 (S.D.N.Y. Jan. 24, 2013).  Generally, such appeals are disfavored since "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered . . . [and] although [§ 1292(b)] was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Id.* (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996) (internal quotation marks omitted)); *see also Prout v. Vladeck*, 319 F. Supp. 3d 741, 746 (S.D.N.Y. 2018) (standard for interlocutory appeal is "high" and such appeals are "reserved for exceptional circumstances" (citing cases)).

In making this determination, a district court will determine whether three elements are present: "[1] such order involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Because the statute is written conjunctively, the absence of some of the elements is sufficient to deny certification of an interlocutory appeal. *See Prout*, 319 F. Supp. 3d at 747 (denying interlocutory appeal because

3

"there is not a substantial ground for difference of opinion on any controlling question of law").

Additionally, even if a "district court concludes that the three factors in § 1292(b) are met, it nevertheless retains 'unfettered discretion' to deny leave to appeal." *Frederick*, 2013 WL 310441, at *5 (quoting *City of New York v. Milhelm Attea & Bros., Inc.*, No. 06-cv-3620 (CBA), 2012 WL 4959502, at *3 (E.D.N.Y. Oct. 17, 2012)). This is because, ultimately, certification "is entirely a matter of discretion for the District Court." *In re The City of New York*, 607 F.3d 923, 933 (2d Cir. 2010). Accordingly, "[s]uch unfettered discretion can be for any reason, including docket congestion and the system-wide costs and benefits of allowing the appeal." *Lopez v. Overtime 1st Ave. Corp.*, 252 F. Supp. 3d 268, 273 (S.D.N.Y. 2017) (Sullivan, J.) (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d 524, 530 (S.D.N.Y. 2014) (internal quotation marks omitted)).

## III. ANALYSIS

The Court now turns to the § 1292(b) analysis. Because the Court concludes that Weinstein has not shown substantial grounds for a difference of opinion as to a controlling question of law, it is unnecessary to consider the rest of the § 1292(b) analysis. Nevertheless, the Court also finds that, independently, this issue is insufficiently exceptional to merit interlocutory appeal and accordingly exercises its discretion to deny Weistein's request.

### A. Weinstein Has Failed to Show a Substantial Ground for Difference of Opinion as to a Controlling Question of Law

It is Weinstein's "burden of demonstrating that there be a substantial ground for difference of opinion on how the Court resolved . . . questions of law." *Milhelm Attea & Bros.*, 2012 WL 4959502, at *4 (internal quotation marks omitted). This is a high bar since, as the Second Circuit has explained, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of

4

opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). The possibility that a district court's opinion might be incorrect is far from sufficient to satisfy this demanding standard and the movant must show "'*substantial doubt*' that the district court's order was correct." *S.E.C. v. Straub*, No. 11-cv-9645 (RJS), 2013 WL 4399042, at *2 (S.D.N.Y. Aug. 5, 2013) (quoting *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-cv-15375 (KMK), 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (emphasis added)). Here, Weinstein contends that Judge Sweet's opinion erred in his interpretation of the term "commercial sex act" in 18 U.S.C. § 1591(a). For the reasons below, the Court finds that Weinstein has failed to show a sufficiently substantial doubt as to Judge Sweet's ruling on this issue.

The validity of Judge Sweet's conclusion that "commercial sex act" is broad enough to include intangible benefits is not subject to substantial doubt. "[C]ommercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). This language, particularly the terms "any sex act" and "anything of value," is quite broad. Indeed, the Supreme Court has instructed that "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219–20 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). The statutory text points to a wide scope.

Consistently with this expansive language, courts have interpreted "thing of value" to include even intangible benefits that are of subjective value to the recipient. At least two courts have subsequently adopted Judge Sweet's analysis in similar cases, finding that "thing of value" can include career advancement, *Canosa v. Ziff*, No. 18-cv-4115 (PAE), 2019 WL 498865, at *22 n. 26 (S.D.N.Y. Jan. 28, 2019), or even just the promise of career advancement, *Huett v. Weinstein Co. LLC*, No. 2:18-cv-06012 (SVW), 2018 WL 6314159, at *3 (C.D. Cal. Nov. 5,

5

2018).  Another court in this circuit has cited Judge Sweet's analysis approvingly for the broad

scope of the statutory language to include less tangible benefits.  *See United States v. Raniere*,

18-cr-204-1, 2019 WL 1903365, at \*22 (E.D.N.Y. 2019).

These decisions are consistent with the caselaw on the scope of "thing of value" more

generally.  The Eighth Circuit held that that this "extremely broad" term could include the receipt

of sexual photographs as well as sexual acts themselves.  *United States v. Cook*, 782 F.3d 983,

989 (8th Cir. 2015).  In conducting this analysis, the Eight Circuit indicated that "'the focus . . .

is to be placed on the value which the [individual in question] subjectively attaches' to what is

sought and received."  *Id.* (quoting *United States v. Petrovic*, 701 F.3d 849, 858 (8th Cir.2012)).

Another court held that "anything of value" could include the intangible benefit of being made a

"prophet" in a church, given that this position was valued by members of the ministry.  *United

States v. Rivera*, No. 12-cr-121 (RBD), 2012 WL 6589526, at \*5 (M.D. Fla. Dec. 18, 2012); *see

also United States v. Nilsen*, 967 F.2d 539, 542–43 (11th Cir.1992) ("Congress' frequent use of

'thing of value' in various criminal statutes has evolved the phrase into a term of art which the

courts generally construe to envelop[] both tangibles and intangibles.").  Finally, in the related

context of the sentencing guidelines, the Second Circuit has indicated that child pornography can

constitute "a thing of value."  *United States v. Bennett*, 839 F.3d 153, 161 (2d Cir. 2016), *as

amended* (Oct. 7, 2016) (citing *United States v. Maneri*, 353 F.3d 165, 168 (2d Cir. 2003)).  The

Court therefore does not find substantial doubt as to Judge Sweet's conclusion that "commercial

sex act" is to be interpreted broadly to include a wide range of benefits.

The Court also finds that there is not substantial doubt as to Judge Sweet's conclusion

that "thing of value" encompasses the alleged facts of this case.  Weinstein offered Noble the

chance to meet in private to "review her film reel and discuss a promised film role" with "a

world-renowned film producer," as well as "the expectation of a film role, of a modeling
meeting, of 'his people' being 'in touch with her.'" *Noble v. Weinstein*, 335 F. Supp. 3d 504,
521 (S.D.N.Y. 2018).   The value of these things for an aspiring actress like Noble could be
"career-making and life-changing." *Id.*  Furthermore, Judge Sweet held that even outside of the
assistance itself, "Noble's reasonable expectation of receiving those things in the future, based
on [Weinstein's] repeated representations that she would, is sufficient." *Id.* (citing *United States
v. Corley*, 679 F.App'x. 1, 7 (2d Cir. 2017)).   The Court agrees that it was reasonable for Noble
to expect that Weinstein would follow through on his promises of career assistance.   A plausible
promise of this kind from a powerful and influential person would certainly be a thing of
subjective value to the promisee. *See Huett*, 2018 WL 6314159, at *3.  This is perhaps
especially true, as Judge Sweet noted, in the acting industry.  *Noble*, 335 F. Supp. 3d at 521 n.8.
In this context, the Court agrees with Judge Sweet that to conclude that this promise had no value
would "not reflect modern reality." *Id.* at 521.   Accordingly, this Court finds Judge Sweet's
analysis to be careful and convincing.

  Weinstein's attempts to cast doubt on this statutory analysis are unavailing.   Weinstein
objects that no "thing of value" was actually given or received, since there was "no *quid pro quo*,
no conferring of a real benefit, and no actual value provided." Def. Mem., Dkt. No. 89, at 6.
This argument rests on the contention that since Noble alleges that Weinstein did not actually
intend to help her, no value was ever actually exchanged. *Id.* at 7.  Yet Weinstein cites no
authority for the proposition that a promise—particularly a promise of a career-making and life-
changing opportunity—is of *no* actual value to the recipient simply because the promisor was
lying at the time. *See Huett*, 2018 WL 6314159, at *3 ("Even if Plaintiff did not in fact receive a
role in exchange for the sex act, but rather only received a promise of a role, such a promise

would still have held value to Plaintiff at the time."). Nor would such a rule be consistent with

the TVPA. Indeed, on Defendant's account, the promise of money for a sex act would not

constitute a "thing of value" if the individual soliciting the sex never intended to pay and acted

accordingly. It is hard to square such a reading with the statute's purpose of punishing sex

trafficking, which may often involve deceitful actors and false promises. It also runs counter to

Congress's intent to cast a wide net by employing the term "any." *See Ali*, 552 U.S. at 218–20.

Finally, Weinstein's argument, raised in passing, that applying § 1591 here would render the

statute unconstitutional relies on the same contention that the alleged conduct did not involve a

"real value exchange," Def. Mem. at 2-3, 7-8, and fails for the same reasons. Therefore, while

Defendant's arguments may be the basis for some reasonable disagreement, they do not rise to

the level of casting substantial doubt as to the soundness of Judge Sweet's interpretation of the

statute.

### B. This Case is Insufficiently Exceptional to Warrant Interlocutory Appeal

Independently of the above and in the alternative, the Court further concludes that the

issue at stake here "is insufficiently 'exceptional' to merit interlocutory appeal" and accordingly

"exercises its 'unfettered discretion' to deny leave to appeal." *Frederick*, 2013 WL 310441, at

*6 (quoting *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 162

(E.D.N.Y.1999)).

Weinstein has failed to show that this case falls into the category of truly exceptional

cases for which interlocutory appeal was designed. As the Second Circuit has instructed,

"Congress passed 28 U.S.C. § 1292(b) primarily to ensure that the courts of appeals would be

able to 'rule on ephemeral questions of law that might disappear in the light of a complete and

final record.'" *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (quoting *Koehler v.*

*Bank of Bermuda Ltd.*, 101 F.3d 863, 864 (2d Cir.1996) (internal brackets and ellipses omitted)).

Weinstein has made no showing that the question of law at issue threatens to disappear. To the

contrary, whether Defendant's alleged promise is a "thing of value" appears likely to remain a

central issue and point of contention in this case as the factual record develops. Weinstein has

also failed to show that this litigation will be so protracted that an early resolution on appeal of

this question of law warrants bypassing the traditional sequence of litigation. *Straub*, 2013 WL

4399042, at *2 ("[I]nterlocutory appeal is a rare exception where, in the discretion of the district

judge, it may avoid protracted litigation." (quoting *In re World Trade Ctr. Disaster Site Litig.*,

469 F.Supp.2d 134, 144 (S.D.N.Y.2007) (internal quotation marks omitted)). Furthermore,

interlocutory review should be "especially rare in the early stages of litigation." *Facebook*, 986

F. Supp. 2d at 533. This is because such appeals "prolong judicial proceedings, add delay and

expense to litigants, burden appellate courts, and present issues for decisions on uncertain and

incomplete records, tending to weaken the precedential value of judicial opinions." *Straub*, 2013

WL 4399042, at *2 (quoting *In re World Trade Ctr.*, 469 F.Supp.2d at 144). Thus, in the

alternative, the Court exercises its discretion to deny Defendant's request for certification.

## IV. CONCLUSION

For the reasons given above, Defendants' motion to certify an interlocutory appeal is

hereby DENIED. This resolves docket item number 88. This case shall proceed pursuant to the

Court's Order scheduling an initial pretrial conference for August 16, 2019. Dkt. No. 119.

SO ORDERED.

Dated: August 5, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge

9